838 F.2d 469
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dennis WISE, Plaintiff-Appellant,
v.
L. CARPENTER, Chief of Security, Maryland State
Penitentiary; S. Hansen, 8-4 Shift Commander; O. Hughes,
Segregation Administrative Supervisor; L. Hopkins,
Segregation Supervisor; J. McLean, Former Segregation
Officer-in- Charge; E. Thomas, Former Segregation
Officer-in-Charge, R. Brown, Segregation Officer-in-Charge,
D. Hand, Segregation Officer-in-Charge, G. Collins, Former
Warden; L. Dorsey, Warden; M. Hawkins, Former Assistant
Warden of Custody; M. Turner, Former Assistant Warden; P.
Schupple, Assistand Warden; J. Galley, Commissioner of
Correction; T. Schmidt, Former Secretary of Public Safety
& Correctional Services; F.F. Hall, Secretary of Public
Safety & Correctional Services, Robert L. Burrell; Howard
M. Lyles, Defendants-Appellees.
 No. 86-7381.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 3, 1987.
Decided: Jan. 19, 1988.
 
 1
 Sheila Mosmiller Vidmar (Piper & Marbury, on brief), for appellant.
 
 
 2
 Mark Disbrow McCurdy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General; Ronald M. Levitan, Assistant Attorney General, on brief), for appellees.
 
 
 3
 Before SPROUSE and WILKINS, Circuit Judges, and MacKENZIE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 MacKENZIE, District Judge:
 
 4
 Dennis Wise, a prisoner in the Maryland Penitentiary, brought an action under 42 U.S.C. Sec. 1983 against two former officials of that institution alleging that he was deprived of his fourteenth amendment due process right to a fair disciplinary hearing on an assault charge when one of the officials did not volunteer at the Adjustment Board hearing that when first interviewed in the prison hospital the victim of the attack did not identify Wise as an assailant. The case was dismissed by the trial court under Federal Rule of Civil Procedure 41(b). We affirm.
 
 I.
 
 5
 On February 1, 1982, Arthur Mack, an inmate at the Maryland Penitentiary, was assaulted by other prisoners and suffered severe head and face injuries. No prison official witnessed the assault. Immediately after the incident occurred, however, prison officials found broken pool sticks and blood on the floor of the building where the assault took place. Later that day, inmate informants reported to Assistant Warden Mclindsay Hawkins that Dennis Wise, his brother, Bruce Wise, and an unrelated inmate, James Wise, had assaulted Mack with the pool sticks. Hawkins investigated the incident. He interviewed Mack at the prison hospital on the morning following the assault. Mack stated that although he had been struck by inmates wielding pool sticks, he could not identify his assailants even when shown a photograph of Dennis Wise. Hawkins forwarded a memorandum to Warden George Collins detailing the interview.
 
 
 6
 Mack was released from the prison hospital a few hours after his initial interview with Hawkins. Shortly after his release, he informed Hawkins that he now remembered that Dennis, Bruce and James Wise had assaulted him. He explained that he was unable to identify them earlier because he was still dazed from the blows he had received. The three accused inmates were individually brought before Mack for a "show-up" identification and Mack identified each as an assailant. Mack then signed a written statement describing the incident and naming Dennis, Bruce and James Wise as the perpetrators. Hawkins ordered the accused prisoners placed in administrative segregation and, for fear of Mack's safety arranged for Mack's transfer to another institution.
 
 
 7
 The following day Dennis Wise received a written "Notice of Infraction or Incident" charging him with the assault on Mack. The infraction notice was prepared by Hawkins. It contained a copy of Mack's written statement. It made no mention of the first interview at the hospital between Hawkins and Mack.
 
 
 8
 The infraction notice served as the charging instrument and principal evidentiary basis for the convening of a hearing before a prison "Adjustment Committee" on February 4, 1982. At the hearing Wise was given the opportunity to call witnesses on his behalf and to present evidence. He attempted to call Arthur Mack because he had heard through the prison "grapevine" that Mack had attributed his injuries to a fall down a flight of stairs. Mack was unavailable having been transferred to another institution for his own safety. All three prisoners claimed that they did not know Mack, but their testimony demonstrated considerable knowledge of his background. Their assertion was obviously false. The Adjustment Committee was also informed that Mack had been friendly with a person who murdered Bruce Wise's girlfriend, a "possible motive" for the assault in the words of the Committee in reaching its conclusions.
 
 
 9
 Assistant Warden Hawkins testified at the hearing. His testimony was short and perfunctory. He remained present throughout the proceeding. He was not asked about Mack's initial denial of Wise's participation in the assault.
 
 
 10
 The Adjustment Committee found Dennis Wise guilty of the infraction and ordered one year in punitive segregation. The evidence the Committee considered in making its findings consisted of Mack's written account and his one-on-one personal identification of Dennis Wise, both as reported in the infraction notice, Mack's injuries, the broken pool sticks and the blood found in the building where the assault occurred, the close relationship between Dennis and Bruce Wise, the inconsistent testimony by the three accused prisoners, and the prisoners' allegations of prior inconsistent statements by the victim. The Committee reported that it "believed the true statements to be the ones made to AWOC Hawkins," as reported in the infraction notice.
 
 
 11
 After unsuccessfully pursuing administrative appeals of the Adjustment Committee's decision and completing his time in punitive segregation, Dennis Wise filed this Section 1983 action in federal court. He obtained Hawkins' first memorandum to Warden Collins detailing Mack's initial inconsistent or exculpatory statements through pre-trial discovery efforts and filed an amended complaint alleging, inter alia, that Hawkins and Collins violated his due process rights in the disciplinary hearing. Wise requested declaratory and injunctive relief, and compensatory damages. The district court referred the matter to the United States Magistrate, who conducted a trial.
 
 
 12
 Wise testified at trial and also presented the testimony of hearing officer Murray, who had presided over the Adjustment Committee hearing. Wise testified that Murray had asked Hawkins at the hearing whether Mack made inconsistent statements about the assault, and that Hawkins replied that the statement in the infraction notice was Mack's only version of the incident. Murray, however, disputed Wise's assertion and testified that if Hawkins had denied there were inconsistent statements he would have written it down (and he had not done so). Murray also testified that for the purposes of making its decision the Adjustment Committee assumed there were prior inconsistent statements, the denials of the knowledge of the identity of an assailant by the person assaulted was very common in prison incidents.
 
 
 13
 At the close of Wise's case-in-chief, the trial court granted the defendants' motion for a Rule 41(b) dismissal. The magistrate found that Hawkins failed to disclose Mack's early statement denying the Wises assaulted him. He held, however, that "the Plaintiff's contentions with regard to the inculpatory or exculpatory evidence do not amount to a constitutional violation." The magistrate also questioned the materiality of Mack's inconsistent earlier statement under the disclosure standards of Brady v. Maryland, 373 U.S. 83 (1963), United States v. Aqurs, 427 U.S. 97 (1976) and United States v. Bagley, 473 U.S. 667 (1985). He concluded that "there was sufficient other evidence to [sic] which the team based their finding."
 
 II.
 
 14
 The principal issue on this appeal is whether Wise received a constitutionally adequate hearing before the prison Adjustment Committee. For guidance, we need search no further that the Supreme Court's durable instructions in Wolff v. McDonnell, 418 U.S. 539 (1974). In Wolff the Court held that although prison adjudicatory processes are subject to scrutiny under the due process clause, countervailing penological interests circumscribe the scope of the process due. Confinement does not strip a prisoner of all constitutional protection, but the prisoner's interests must be balanced against the institution's legitimate interests in maintaining security and providing expeditious adjudicatory processes.
 
 A. Wise's Brady Contention
 
 15
 Under the principles established in Wolff, we reject Wise's contention that the full panoply of criminal trial rights flowing from Brady and its progeny apply to prisoners in disciplinary settings. See Ponte v. Real, 471 U.S. 491, 495 (1985); Baxter v. Palmigiano, 425 U.S. 308, 315 (1976). Brady's broad disclosure requirements simply cannot be reconciled with the needs and exigencies of the institutional environment. See Wolff, 418 U.S. at 566 ("Prison officials must have the necessary discretion ... to limit access to other inmates to collect statements or to compile other documentary evidence."). The pre-trial discovery right that Brady commands would unduly interfere with prison officials' efforts to preserve safety and order by screening potentially disruptive information from inmate review. Moreover, it would inject unnecessary delay into a process that must be expeditious to be effective.
 
 B. Wise's "Fundamental Fairness" Contention
 
 16
 This is not a situation in which prison regulations prohibited an inmate from calling witnesses. Dalton v. Hutto, 713 F.2d 75 (4th Cir.1983). There is no claim in this case of misconduct by the Adjustment Committee. Rather, the claim is made that Deputy Warden Hawkins' failure to volunteer the details of his first oral interview with Mack violated fundamental fairness as it is set forth under Wolff.
 
 
 17
 Hawkins was a witness before the Adjustment Committee. He was not questioned by the inmates when they had the opportunity to do so about alleged statements by Mack that he had not identified Wise at the outset and that he had received his injuries when he fell down the stairs. The record clearly indicates that the Wise group, including Dennis, had full knowledge that Mack was alleged to have made such statements. In testifying, and through their representative, they informed the Committee of Mack's statements.[1] The Committee considered Mack's inconsistent statements. As indicated we do not interpret Wolff to include a Brady-style right to exculpatory evidence, nor does it appear that Hawkins' role in the proceedings would warrant a reversal if such a right did exist. Finally, based on Chairman Murray's testimony we find that Hawkins' failure to disclose the earlier statement of Mack did not prejudice Wise, for prior inconsistencies were assumed by the Committee in reaching its decision. Under these circumstances, Wolff's requirements of fundamental fairness outlined in that decision on pages 563-566, i.e., advanced written notice of the claimed violation, a written statement from the fact finder detailing the evidence relied upon and the reasons for the disciplinary action, and a qualified right to call witnesses and present evidence not unduly hazardous to institutional safety or correctional goals, were satisfied.
 
 
 18
 AFFIRMED.
 
 
 19
 SPROUSE, Circuit Judge, concurring in part and dissenting in part:
 
 
 20
 I agree with the majority that it would be unwise to extend the full panoply of Brady protection to the prison setting. Such an unyielding rule would constrict the broad discretion prison administrators must exercise in operating their institutions on a day-to-day basis. In my view, however, by withholding important defense information from Dennis Wise, the institution implicated specific constitutional rights, which the Supreme Court has recognized are essential to fair prison disciplinary procedures. Not only do inmates have a right to present a defense in disciplinary hearings, Wolff v. McDonnell, 418 U.S. 539, 566 (1974),[1] prison officials have a fourteenth amendment duty to provide reasons for their actions that impact negatively on the exercise of that right. See Ponte v. Real, 472 U.S. 491 (1985).[2] Here, the decision to withhold material, exculpatory evidence from Wise obviously hindered his defense,[3] and there appears to have been no legitimate penological justification for that decision. At the very least, I feel the Ponte rationale requires the prison officials to provide some explanation for their conduct that is capable of examination under the Wolff balancing test.[4]
 
 
 21
 A brief review of the facts clearly shows that Mack's exculpatory statement was material, and I cannot assume, as does the majority, that its disclosure would have had no impact on the outcome of Wise's disciplinary hearing.
 
 
 22
 Assistant Warden Hawkins questioned Mack about his injuries on the morning following the assault. At the time, Mack was unable to name his attackers. Hawkins suspected Dennis Wise's involvement, however, and he came to the interview armed with a photograph of Wise. When shown the photograph, Mack expressly denied that Wise participated in the assault. Hawkins documented Mack's exculpatory response in a memorandum. He sent a copy of the memo to the Warden and placed other copies in his own investigatory file and in Mack's "base" file.
 
 
 23
 Mack "remembered" who attacked him shortly after his initial interview with Hawkins. He immediately gave Hawkins a second statement, recounting in explicit detail the events surrounding the assault and Dennis Wise's participation in it. Hawkins then drafted Mack's statement into a formal infraction notice, and served it on Wise the next day. The notice neglected to mention Mack's prior statement.
 
 
 24
 The disciplinary hearing was held the following day. Hawkins was present throughout it. Although aware the accused inmates were attempting to impeach Mack's assertions as reported in the infraction notice, he did not reveal the existence of Mack's exculpatory statement--either to Wise or to the Adjustment Committee.
 
 
 25
 The Committee determined Wise's guilt principally on the basis of the allegations in the infraction notice. That notice provided the only direct evidence linking Wise to the assault. Aside from it, there simply was no proof that Wise participated in the incident. It is true that the Committee considered other evidence, e.g., broken pool sticks, inconsistent denials of knowledge about the victim, a possible motive for the assault, etc., but none of it supported the critical identity link-up that presentation of Mack's first statement would have impeached. In summary, the evidence Hawkins concealed directly contradicted the only evidence of Wise's participation available to the Committee.
 
 
 26
 The majority, however, skirts the materiality question by relying on the fact that Wise was not precluded from testifying to a grapevine rumor that Mack had attributed his injuries to a fall. I find this logic unpersuasive because it begs the critical question whether there is a reasonable probability that the outcome would have been different had Hawkins disclosed Mack's actual statement.[5] See United States v. Bagley, 473 U.S. 667 (1985); see also Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842, 847 (4th Cir.1964) ("we will not indulge in the speculation that the undisclosed evidence might not have influenced the fact finder"). Although the Committee assumed the existence of rumored inconsistencies, it could not have assumed that Mack, in no uncertain terms, expressly exonerated Wise to the Assistant Warden of the Institution--just a few short hours before he gave his incriminating statement.[6] Absent any other evidence directly corroborating Wise's participation, I cannot conclude the nondisclosure of Mack's initial statement was harmless. I would vacate the magistrate's dismissal and remand with instructions to allow presentation of further evidence.
 
 
 
 [1]
 Joint Appendix, pages A-15 and A-16. Dennis Wise, plaintiff here, testified that the Wises told the Adjustment Committee that the reason they wanted Mack as a witness was to test which of his three versions were true, i.e., Mack had told the desk sergeant or someone at the hospital that he had fallen down the steps; that he had beaten in retaliation for a murder he supposedly committed in Hagerstown. Wise did not then mention the third version, but see Joint Appendix, pages A-53 and A-54. There Bruce Wise testified that the Wises' representative argued to the Adjustment Committee that Arthur Mack had said that the Wises were not the ones that attacked him
 Whether any of the three versions was necessarily the truth is not the point. The point is that the Wises knew of three versions, advised the Adjustment Committee of the three versions, but did not seek to question Hawkins about them while he was on the witness stand.
 
 
 [1]
 In Wolff, the Court observed that "[o]rdinarily, the right to present a defense is basic to a fair hearing," and held that inmates should be allowed to call witnesses and present documentary evidence in their defense if permitting them to do so will not jeopardize institutional safety or correctional goals
 
 
 [2]
 In Ponte, a prison disciplinary hearing board refused to allow an inmate accused of fighting to present witnesses on his behalf. The board failed to provide a reason for its refusal either to the accused inmate or on the written record of the proceedings. In review of the petitioner's petition for habeas corpus, the Court framed the issue as follows: "whether the Federal due process requirements impose a duty on the board to explain, in any fashion, at the hearing or later, why witnesses were not allowed to testify." Id. at 497. The Court responded in the affirmative:
 We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later." Explaining the decision at the hearing will of course not immunize prison officials from a subsequent court challenge to their decision, but so long as the reasons are logically related to preventing undue hazards to "institutional safety or correctional goals," the explanation should meet the due process requirements as outlined in Wolff.
 Id. at 497 (emphasis added).
 
 
 [3]
 See Clutchette v. Procunier, 497 F.2d 809, 818 (9th Cir.1974) ("The fundamental guaranty of due process is the opportunity to be heard... The ability to produce evidence other than [the prisoner's] own testimony is necessary to assure that he will be heard 'in a meaningful manner.' Without such a right, relevant exculpatory evidence, not within the personal knowledge of the accused but nonetheless essential to a fair and accurate fact finding determination, may not be heard at all") (citations omitted), rev'd on other grounds, sub. nom., Baxter v. Palmigiano, 425 U.S. 308 (1976)
 
 
 [4]
 In Ponte, the Court expressly declined to set a time frame for the disclosure of the hearing board's reasons for refusing an inmate's request for a witness. It acknowledged that "if prison security or similar paramount interests appear to require it, a court should allow at least in the first instance a prison official's justification for refusal to call witnesses to be presented to the court in camera." Id. at 499. I think the same rule should govern in the case of nondisclosure of material, exculpatory evidence
 
 
 [5]
 The majority also ambiguously asserts that Hawkins "was not questioned by the inmates when they had the opportunity to do so about alleged statements by Mack that he had not identified Wise at the outset" and that "the record clearly indicates that the Wise group, including Dennis, had full knowledge that Mack was alleged to have made such statements." Ante at 9. In fact, the record discloses--and Hawkins does not dispute--that Dennis Wise was completely unaware of Mack's exculpatory statement throughout the entire adjustment process. Under these circumstances, Wise's failure to cross-examine Hawkins concerning this statement at the adjustment hearing certainly cannot be considered a default
 
 
 [6]
 The Committee simply was not aware of any facts on which it could have based such an assumption