**Joseph Carl BROWN, Plaintiff, Appellee,**

v.

**Joseph PONTE, et al., Defendants, Appellants.**

**No. 87–1066.**

United States Court of Appeals, First Circuit.

Submitted Nov. 6, 1987.

Decided March 14, 1988.

William D. Luzier, Jr., Asst. Atty. Gen., Dept. of the Atty. Gen., James M. Shannon, Atty. Gen., and A. John Pappalardo, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., on brief for defendants, appellants.

Joseph Carl Brown, pro se.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

Joseph Carl Brown, a prisoner, commenced this action against Joseph Ponte, Superintendent of M.C.I. Cedar Junction, and Donald Lafratta, the institutional pa-

role officer at Cedar Junction. Brown bases jurisdiction on 42 U.S.C. § 1983. He alleges that he was transferred from Massachusetts to Connecticut to face criminal charges there without a hearing and without being informed that he had a right to contest his "extradition" to Connecticut.

## I.

On October 4, 1982, the Massachusetts Parole Board granted Brown parole. At this time, Brown signed two documents. The first related to conditions of parole and contained as a condition the language "Report to Connecticut Warrant only." The second was entitled "Agreement of Prisoner When Permitted to go to Another State." In it, Brown stated that in consideration of being granted the privilege of leaving Massachusetts and going "to Connecticut Warrant", Brown waived extradition *back* to Massachusetts. This advance waiver is not relevant to Brown's transfer to Connecticut. On the same day Brown was transported to Connecticut by officers of the Hartford Police Department.

Brown moved for summary judgment in his § 1983 action on December 23, 1983. The district court denied this motion. It found that Brown had voluntarily signed the agreement concerning parole conditions. However, it held that there was a genuine issue of material fact whether Brown waived his extradition rights upon signing the parole agreement. To reach this result the court relied on Brown's statement that he interpreted the condition that he go to the Connecticut warrant as meaning that he would be taken first to Springfield, Massachusetts where the warrant had been lodged against him. The court also found that appellants' good faith reliance on Brown's execution of the parole agreement remained unresolved.

After a telephone trial, the court issued Findings, Rulings and Order for Judgment. It found that Brown "was released on parole to the Connecticut authorities under the interstate [sic] Agreement on Detainers." [1] *See* M.G.L. c. 276 App., §§ 1–1 through 1–8. The court pointed out that Article IV(d) [2] of the Detainer Agreement, which governs involuntary transfers, incorporates the right to a pre-transfer hearing provided in section 10 of the Uniform Criminal Extradition Act. M.G.L. c. 276, § 19; *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The court found that Brown's execution of the parole agreement was not a waiver of his right to a hearing because Brown was never informed that the signing of the agreement constituted such a waiver. The court also found that Brown had assumed that a hearing would be conducted before he went to Connecticut.

The court awarded $1,000 in nominal damages to Brown. It found that, although Brown had been denied a hearing, he had not suffered any actual damage. Specifically, Brown had argued that if he had been afforded a hearing, he could have established that he was not in Connecticut at the time of the crime referred to in the Connecticut warrant. The court held that Brown could not have raised this issue in an extradition hearing. *See* M.G.L. c. 276, § 20H (guilt or innocence of person may not be inquired into "except as it may be involved in identifying the person held as the person charged with the crime"). The court did not address appellants' contention, raised in their answer to Brown's complaint, that they were immune from § 1983 damages liability.

## II.

On appeal, appellants argue that Brown's transfer was not accomplished pursuant to the Interstate Agreement on Detainers. They claim that the court's finding that Brown was released on parole to the Connecticut warrant under the Interstate Agreement on Detainers is "internally inconsistent and mutually exclusive." Rather, they contend that Brown voluntar-

1. There is no evidence in the record of any detainer or other document relating to a request by Connecticut authorities for Brown's presence in that state.

2. Article IV(d) provides that "[n]othing contained in this Article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery...."

ily agreed to be transferred, as a condition of parole, to the Connecticut warrant. Thus, they assert, the notice, hearings and waiver requirements of the Detainer Agreement simply do not apply to Brown's situation. Appellants also reassert their claim that they are immune from the damage award.

■ We first address the question whether appellants are entitled to the defense of qualified immunity in this action. The liability of government officials for constitutional violations has been "severely curtailed" by the doctrine of qualified immunity. *Knight v. Mills*, 836 F.2d 659, 665 (1st Cir.1987) (citation omitted). The purpose of this doctrine is the "protection of government officials from the threat of suits in response to decisions made in carrying out their public duties." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974)). Thus, the defense of qualified immunity is available to state administrative officials charged with the performance of discretionary functions which fall within the scope of their authority and which are actions typically performed by such officials. *Knight*, at 665–66.

■ Even though the district court usually will make the determination concerning the nature of an official's position and duties, *id.* at 665–666, we find nothing in the record to indicate that either Ponte or Lafratta were not entitled to raise the qualified immunity defense. Generally, prison officials and officers are included in the category of those whose positions qualify them for such immunity. *See Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978) (director of the State Department of Corrections, warden and assistant warden of prison, correctional counselors, person in charge of handling prisoner mail); *Maldonado Santiago v. Valazquez Garcia*, 821 F.2d 822, 829–30 (1st Cir.1987). The action about which Brown complains—transferring him "to the Connecticut warrant"—appears to fall squarely within appellants' discretionary authority, for typically prison officials must arrange for prisoners' transfers in myriad different factual circumstances. As a result, the qualified immunity defense is available to appellants.

■ This defense shields appellants from damages only if their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). If the law at the time of appellants' actions was not "clearly established," they could not have "known" that their conduct was forbidden. *Id.* Thus, the question is whether it was clearly established in the fall of 1982 that a prisoner who agreed to be released on parole on the condition that the prisoner "go to" a warrant in another state was entitled to the procedural protections afforded those transferred under the Interstate Agreement on Detainers.

■ Even assuming that the Connecticut authorities requested Brown's presence pursuant to the Detainer Agreement, we find that appellants are immune from this § 1983 damages action. In *Cuyler v. Adams*, the Supreme Court held that prisoners transferred pursuant to Article IV of the Detainer Agreement were entitled to the safeguards provided for in the Extradition Act. 449 U.S. at 449–50, 101 S.Ct. at 712–13. This includes the right to a pretransfer hearing and the right to waive extradition only under those circumstances contained in the Extradition Act. *See* M.G. L. c. 276, § 19 (right to apply for writ of habeas corpus to challenge in a hearing the legality of prisoner's arrest); § 20J (waiver).

Section 20J provides that a prisoner "may waive the issuance and service of the warrant ... and all other procedure incidental to interstate rendition proceedings, by executing or subscribing in the presence of any court or justice of this commonwealth ... a writing which states that he consents to return to the demanding state; provided, that ... it

shall be the duty of such court or justice to inform such person of his rights to the issuance and service of a warrant in interstate rendition and to obtain a writ of habeas corpus as provided in section nineteen.... provided, that nothing in this section shall be deemed to limit the right of the accused person to return voluntarily and without formality to the demanding state nor shall the foregoing waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this commonwealth." (emphasis added).

The underlined language, we think, applies to the instant situation—where a prisoner voluntarily agrees to accept parole on the condition that he "go to" a warrant issued by another state. Indeed we find *In re Schoengarth*, 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 (1967), a case very similar to the present one, persuasive. In *Schoengarth*, a prisoner challenged the ability of the California Adult Authority to condition its offer of parole on an agreement that the prisoner be released to the custody of Colorado officials to stand trial there. The court held that such a condition was a proper exercise of a parole board's authority. 57 Cal.Rptr. at 602, 425 P.2d at 204; *see also* 59 Am.Jr.2d *Pardon and Parole* § 80 (1987) (in addition to customary parole conditions controlling residence and employment, other conditions may be imposed such as parolee's agreement to be released to the custody of another sovereign asserting a claim against him).

Certainly there is no doubt that Brown signed the parole agreement voluntarily and the district court so found. Such an agreement would appear to render inapplicable the strict waiver requirement of § 20J. *In re Schoengarth*, 57 Cal.Rptr. at 605, 425 P.2d at 205. As the court in *Schoengarth* stated,

In the present type of proceeding, however, such a waiver is surplusage.... The phrase, "voluntarily and without formality," typically describes the return of

a fugitive who has not been in custody in the asylum state; but it is equally applicable to the transfer of a prisoner who chooses to accept a parole on the condition that he "go to hold" in a sister state, and manifests that consent by signing the corresponding parole agreement. In such a case, accordingly, there is no additional need for the formal waiver prescribed by the first paragraph of the statute.

*Id.* (footnote omitted). The only cases we could find that involved § 1983 challenges to the lack of a pre-transfer hearing concerned persons arrested in one state and then transferred to another state without *any* formalities. *See Crumley v. Snead*, 620 F.2d 481 (5th Cir.1980); *Brown v. Nutsch*, 619 F.2d 758 (8th Cir.1980); *McBride v. Soos*, 594 F.2d 610 (7th Cir. 1979); *Wirth v. Surles*, 562 F.2d 319 (4th Cir.1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *Sanders v. Conine*, 506 F.2d 530 (10th Cir.1974).

Given *Schoengarth*, we find that it was not clearly established, in 1982, that a prisoner in Brown's position—that is, one who voluntarily signed a parole agreement containing the condition that he go to another state to face charges there—was entitled to a pre-transfer extradition hearing, or to notice of the procedural requirements of the Detainer Agreement. In fact, § 20J appears to provide specific authorization for the present circumstances, although we need not so definitely decide since we rest our decision on qualified immunity. That is to say, we have not been alerted to any cases in which the rights Brown claims had been acknowledged to exist in 1982, and we have no particular reason to think that Brown's claim on the merits is legally correct today (though we need not decide it). Thus we conclude that the "contours of the right" Brown alleges appellants violated in 1982 were not sufficiently clear that appellants reasonably could have understood that what they were doing violated that right. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The judgment of the district court is therefore *reversed.*