Richard ABRAZINSKI, Plaintiff,

v.

Larry DuBOIS, Donald Allen, Ronald Duval, Martin Magnusson, Peter Pepe, James T. Walsh, John Hines, Donna Phillips, Donna Carrier, Anthony Silva, Kenneth Mahtesian, and Martin Leonard, Defendants.

Civil Action No. 93–10640–GAO.

United States District Court,
D. Massachusetts.

Aug. 16, 1996.

Richard Abrazinski, South Walpole, MA, pro se.

Rosemary C. Scapicchio, Boston, MA, for Richard Abrazinski.

Charles M. Wyzanski, Mass. Dept. of Corrections, Boston, MA, for Larry DuBois, Peter Pepe, James T. Walsh, Donna Phillips, Donna J. Carter, Anthony Silva, Kenneth Mathesian, Martin D. Leonard.

Charles M. Wyzanski, Mass. Dept. of Corrections, Boston, MA, Terrance J. Brennan, Francis E. Ackerman, Attorney General's Office, Augusta, ME, for Donald L. Allen, Martin Magnusson, John Hines.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff brought this action under 42 U.S.C. § 1983 complaining of various violations of his rights as an inmate in the Massachusetts prison system and seeking both injunctive relief and damages. The defendants are prison officials. An earlier decision on a motion by the defendants for summary judgment reduced the scope of issues pending in the case. *See Abrazinski v. DuBois*, 876 F.Supp. 313 (D.Mass1995). As a result, there are three remaining issues: (1) whether the assignment of the plaintiff to an "awaiting action" unit prior to a disciplinary hearing amounted to punishment without due process; (2) whether the plaintiff was denied due process because he was not permitted to call witnesses to testify in person at his disciplinary hearing; and (3) whether he was denied due process because the hearing officer received, *ex parte*, hearsay evidence from unidentified informants without complying adequately with state regulations pertaining to such evidence. Both parties have reargued those issues on cross motion for summary judgment, as directed by the Court (Tauro, Ch.J.) in its procedural order of February 6, 1995 (Docket # 59). The Court now grants the defendants' motion and dismisses the claims.

## I

Abrazinski entered the Massachusetts correctional system as a result of his transfer from Maine's correctional system, pursuant to the New England Interstate Corrections Compact. *See* Mass.Gen.L. ch. 125 app., §§ 1–1 *et seq.* While incarcerated at the Massachusetts Correctional Institution at Cedar Junction ("MCI–Cedar Junction"), Abrazinski was suspected of stabbing another inmate. The incident occurred on February 4, 1992. That same day, he was transferred from MCI–Cedar Junction to the Massachusetts Correctional Institution at Norfolk ("MCI–Norfolk") where he was housed in the "Receiving Building."

As an inmate in the Receiving Building, the plaintiff's prison privileges were more restricted than they would have been had he been housed in the general population, although they were not as restricted as privileges for inmates on "detention" (or punishment) status. On February 25, 1992, the plaintiff was formally given a disciplinary citation for the stabbing, and a hearing was held in April. The plaintiff was found guilty of the violation and disciplinary segregation

was ordered, but for reasons that do not appear in the record the finding was overturned after an appellate administrative review. A rehearing was scheduled for early June 1992 but was postponed at the request of the plaintiff's lawyer and was held August 20, 1992. In the meanwhile, the plaintiff was involved in another incident, and he was transferred from MCI–Norfolk to a third institution, the North Central Correctional Institution at Gardner ("NCCI–Gardner"). The August disciplinary hearing was held at that facility.

There is a factual dispute whether the plaintiff requested the personal presence of witnesses in advance of the hearing, but it may be assumed for present purposes that he did. The witnesses he wanted to have testify included the victim of the stabbing and other inmates at MCI–Cedar Junction or at MCI–Norfolk. His request, renewed at the commencement of the hearing at NCCI–Gardner, was denied. Instead of the live testimony, the plaintiff submitted affidavits from most of his witnesses. A corrections officer testified at the hearing and was cross-examined by the plaintiff's lawyer. Purporting to act under Corrections Department regulations, the hearing officer also received evidence outside the presence of the plaintiff and his lawyer about what three unidentified informants had told prison authorities about the incident at issue. The informants' information tended to inculpate the plaintiff. The hearing officer also considered written reports by other corrections officers. After the second hearing, the plaintiff was again found guilty of the disciplinary violations and was sentenced to two years in segregation as a result. His subsequent appeal was rejected. He then commenced this lawsuit. The plaintiff eventually completed the term of his disciplinary segregation and, in fact, is no longer an inmate in the Massachusetts system.

## II

Summary judgment is appropriate wherever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). The non-moving party is entitled to all reasonable inferences that may be derived from the evidence submitted, and the evidence must be viewed in the light most favorable to it. *Woodman*, 51 F.3d at 1091. These standards do not differ in situations where, as here, more than one party has moved for summary judgment. "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.*, 761 F.Supp. 194, 197–98 (D.Mass.1991) (citing 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720 (1983)).

In stating his claims under § 1983, the plaintiff relies on, and the defendants attempt to distinguish, several cases decided by the Massachusetts Supreme Judicial Court regarding inmate's rights under state prison regulations. *See Kenney v. Commissioner of Correction*, 393 Mass. 28, 468 N.E.2d 616 (1984); *Lamoureux v. Superintendent, Mass. Correctional Inst.*, 390 Mass. 409, 456 N.E.2d 1117 (1983); *Nelson v. Commissioner of Correction*, 390 Mass. 379, 456 N.E.2d 1100 (1983). While consideration of these cases may contribute to the understanding and resolution of Abrazinski's claims, it is important to avoid confusing state law issues and federal constitutional issues. What matters in this § 1983 action is whether the defendants violated Abrazinski's right to due process guaranteed by the federal Constitution. The significance of state law in such a case is that it may confer a right upon an inmate that is of such "real substance" that the withdrawal of the right must conform to the requirements of due process guaranteed by the Constitution. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). But while a violation of Massachusetts state law, including prison regulations, may in some cases be a part of the proof of the claimed deprivation of a federally guaranteed right, establishing a violation of a state rule will not always suffice to prove such a deprivation. *See McGuinness v. Dubois*, 75 F.3d 794, 797–800

(1st Cir.1996). *See also Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976). The inquiry must always remain focussed on federal constitutional principles. *McGuinness,* 75 F.3d at 798.

■ Viewed in that focus, Abrazinski's claims are not sustainable. First, his assignment to an "awaiting action" unit prior to his disciplinary hearing did not amount to punishment without due process. Inmates placed in administrative segregation prior to a disciplinary hearing have certain limited due process rights: Prison officials are "obligated to engage only in an informal, nonadversary review of the information supporting [the prisoner's] administrative confinement, including whatever statement [the prisoner] wished to submit, within a reasonable time after confining him to administrative segregation." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983).[1] That the conditions of confinement in administrative segregation are substantially identical to those an inmate would face if found guilty of some infraction of prison regulations at the hearing does not matter, so long as the due process requirements are met, as they were here. *See id.* at 463 n. 1, 467 n. 4, 103 S.Ct. at 867 n. 1, 869 n. 4. Abrazinski's specific claim that he was entitled to an adversary hearing as a matter of due process must be rejected. *Id.* at 475–76, 103 S.Ct. at 873–74.

■ Abrazinski's second claim pertains to the defendants' refusal to permit him to call certain witnesses at his hearing. The Supreme Court has held that an inmate facing a disciplinary proceeding has a qualified right to call witnesses to testify. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979–80. The right is qualified by the "need to provide swift discipline in individual cases" and the "very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). Abrazinski was not permitted to call inmates incarcerated at other institutions, but almost all of those he would have called submitted affidavits instead. This accommodation to the realities of prison life did not deny him a fair opportunity to present evidence contradicting the evidence against him. *See id.* at 495, 105 S.Ct. at 2195.[2] A disciplinary hearing is not a criminal trial and the inmate is not entitled to the "full panoply" of rights available at a trial. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974–75. Moreover, although Abrazinski has complained about the denial of live testimony from his witnesses, he "has never suggested what their live testimony would have added." *McGuinness,* 75 F.3d at 800. Further, to the extent an explanation of their decision was required, the defendants have provided it. The fact that the reasons were not given to Abrazinski at the hearing or placed into the administrative record is of no constitutional moment so long as they have been supplied in response to the plaintiff's claim here. *Ponte,* 471 U.S. at 499–500, 105 S.Ct. at 2197–98.

■ Finally, Abrazinski contends he was denied due process because the hearing officer received, *ex parte,* hearsay evidence from unidentified informants without complying adequately with state regulations pertaining to such evidence. Specifically, he complains that while the hearing officer explained why

1. *Hewitt* also held that the inmates had a right to due process because relevant prison regulations had conferred a liberty interest on the prisoners. The Supreme Court recently overruled that portion of *Hewitt* in *Sandin v. Conner,* —— U.S. ——, ——–——, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995); *but see, id.* at —— n. 5, 115 S.Ct. at 2300 n. 5 (noting that *Sandin* is "not technically" overruling *Hewitt*). *Sandin* consequently casts considerable doubt on whether Abrazinski has any liberty interest in anything except good time credits, the loss of which he does not assert. *See Dominique v. Weld,* 73 F.3d 1156, 1160–61 (1st Cir.1996). Giving him the benefit of the doubt, this Court has based its analysis on the assumption that Abrazinski does possess the liberty interest he claims.

2. The Court also notes that since the issuance of the opinion denying the defendants summary judgment on this ground, the First Circuit has expressed its disagreement with that opinion's conclusion that "isolation in a segregation unit alone, *even if legal,* is not sufficient to support a denial of witnesses." *McGuinness v. Dubois,* 75 F.3d 794, 799 n. 6 (quoting *Abrazinski,* 876 F.Supp. at 323) (emphasis in original).

he found the informants reliable, the officer did not state *how,* that is, whether the officer knew the informants' identities, cross-examined them, interviewed them personally or through affidavits, etc. *See Lamoureux,* 456 N.E.2d at 1121 n. 12. Abrazinski relies primarily on the Supreme Judicial Court decisions in *Lamoureux* and *Nelson* in these assertions. It is far from clear that such extensive procedures are necessary as a matter of due process. *See Wolff,* 418 U.S. at 571 n. 19, 94 S.Ct. at 2982 n. 19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."). But even assuming that due process mandated the special handling of informant evidence as outlined in the Massachusetts rules, the record demonstrates that the hearing officer did properly indicate the basis on which he was relying on the informants' information, stating both past reliability and the nature of the information. Due process does not require more than was done in Abrazinski's case.

### III

■ In addition to contesting the substance of the plaintiff's claims, the defendants contend that they have qualified immunity from the plaintiff's claims for damages under 42 U.S.C. § 1983. The Court agrees with the defendants on this point as well.

The defendants are all officials of the Massachusetts correctional system. Their particular actions complained of by the plaintiff in this case all involve discretionary determinations: where to house the plaintiff and what kind or quality of evidence to admit and consider at his disciplinary hearing. As such, the defendants are responsible in damages only if their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Brown v. Ponte,* 842 F.2d 16, 18 (1st Cir.1988). For a right to be "clearly established" under this principle, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In considering whether the defendants are entitled to qualified immunity, the question is whether the rights that underlie his claim were so "clearly established" that the defendants must have known their actions would violate those rights. *Unwin v. Campbell,* 863 F.2d 124, 131 (1st Cir.1988). None of the plaintiff's claims assert the violation by the defendants of such a "clearly established" right.

The "contours" of the rights claimed must be discerned in the context of the particular circumstances. *Creighton,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39. It is not enough for the plaintiff to say that he has a right *in general* to call witnesses or a right *in general* to confront and cross-examine the witnesses against him. A plaintiff may not "convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Creighton,* 483 U.S. at 639, 107 S.Ct. at 3039. To overcome the defendants' objection that they are protected by qualified immunity for their conduct of the disciplinary proceedings, then, the plaintiff must show that it was "clearly established" (i) that it was a violation of his right to due process for the defendants to refuse to permit him to call to testify in person inmates who were housed in another institution and whose affidavits were received in evidence at the hearing, or (ii) that it was a violation in the particular circumstances of a prison stabbing to receive testimony from undisclosed informants who were inmates potentially subject to what the Court has described as the "very real dangers" of prison life. *Ponte,* 471 U.S. at 495, 105 S.Ct. at 2195.

Under the regulations of the Department of Corrections in effect at the time, the plaintiff had a right "to call and question witnesses in his defense, or to present other evidence, *when permitting him to do so will not be unduly hazardous to personal safety, institutional safety or correctional goals.*" 103 CMR 430.14(4) (effective April 10, 1992) (emphasis added). The regulation also con-

tains a non-exclusive list of several factors to be considered by the hearing officer considering an inmate's request to call certain witnesses. *Id.* Similarly, with respect to "informant information," the regulations permit the hearing officer to "consider documentary evidence and/or testimony which is not presented in the presence of the inmate or his representative" if the hearing officer makes certain specific predicate findings and if he summarizes the information to the inmate at the hearing. 103 CMR 430.15 (effective April 10, 1992). Thus, the regulations permit, in some circumstances, both the denial of the inmate's request to call live witnesses and the receipt, *ex parte,* of informant testimony. In other words, the regulations generally permit rather than forbid the actions the plaintiff complains of. Decisions applying these regulations necessarily involve the weighing of factors and the sound exercise of judgment. As the Court noted in *Wolff,* constitutional rules do not cripple the ability of prison authorities to exercise their "necessary discretion" in such matters. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979.

It is possible, of course, that prison officials might fail to comply with the regulations in some way significant enough to amount to a denial of due process. For example, the hearing officer might refuse the inmate's request to call a witness not because of any of the reasons mentioned or suggested in the regulation but for some frivolous or biased reason. *See id.* at 556, 94 S.Ct. at 2974–75. For purposes of the immunity inquiry, however, the focus is not on whether the particular decision was right or wrong under the regulation, but rather whether that particular decision was so wrong that any reasonable person in the official's position would have known it was wrong. *Creighton,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39.

The same considerations pertain to the plaintiff's assertion that he was wrongfully housed in "awaiting action" status at MCI–

Norfolk. His contention appears to be that the conditions of confinement for inmates in "awaiting action" status was indistinguishable from the conditions of confinement of those inmates who were being punished for disciplinary offenses. He therefore claims that he was in effect being punished prior to any hearing, in violation of due process.

At the time the plaintiff was transferred from MCI–Cedar Junction to MCI–Norfolk, the following regulation promulgated by the Massachusetts Department of Corrections applied to the placement of inmates on "awaiting action" status:

(1) *At the discretion of the Superintendent or his designee,* and subject to any applicable review requirements, an inmate who is under investigation for a possible disciplinary offense or has been charged with or found guilty of a disciplinary offense, may be placed on awaiting action status at the institution where he is then confined. Such status may include more restrictive confinement *as deemed appropriate by the Superintendent or his designee.*

(2) An inmate who is under investigation for a possible disciplinary offense, or who has been charged with or found guilty of a disciplinary offense, may be transferred to another Massachusetts institution, or an out-of-state institution prior to a classification hearing. An inmate so transferred may, *at the discretion of the Superintendent or his designee at the receiving institution,* and subject to any applicable review requirements, be placed on awaiting action status. Such status may include more restrictive confinement *as deemed appropriate by the Superintendent or his designee.*

103 CMR 430.21 (1991) (emphasis added).[3]

The plaintiff's case fell within the scope of these regulations, as he was "[a]n inmate who [was] under investigation for a possible disciplinary offense" when he was trans-

**3.** 103 CMR 430.01 through 430.29 deal with disciplinary proceedings. The plaintiff refers in his brief to another series of regulations in the same chapter, §§ 421.01 through 421.26, dealing with assignment of inmates to departmental segregation units. Those regulations appear to apply where there are no disciplinary proceedings underway or contemplated but the authorities believe an inmate's "continued presence in a general institution population would be detrimental to the program of the institution." 103 CMR 421.01. They do not pertain to the plaintiff's situation in the events at issue.

ferred from MCI–Cedar Junction to the Receiving Building at MCI–Norfolk, and shortly thereafter he became one "who has been charged with ... a disciplinary offense." *Id.*

The defendants' actions in this respect appear more to conform with, rather than contravene, the regulations. The regulations impose no mandatory limits that help the plaintiff in his claim. On the contrary, they grant a substantial measure of discretion to the prison authorities to place persons suspected of or charged with serious disciplinary violations in "more restrictive confinement" pending the determination of the charges.

The plaintiff contends that the holding in *Kenney v. Commissioner of Correction*, 393 Mass. 28, 468 N.E.2d 616 (1984), limits the authority of the defendants to place him in "awaiting action" status pending the determination of his guilt or innocence of the charges. In *Kenney*, the Supreme Judicial Court held that it was unlawful under the applicable regulations, which were similar but not identical to those applicable in 1992, for prison officials to have placed an inmate "awaiting action" in a departmental segregation unit ("DSU"). The holding was based on the particular facts of the case, which included the trial judge's finding that the inmate's detention in the DSU had been "punitive," *id.* 468 N.E.2d at 617, and the determination that "the superintendent placed Kenney in a DSU cell for commission of specific disciplinary offenses before Kenney had been found guilty, before sanctions had been imposed, and before the Commissioner had found that Kenney posed a substantial threat to the institution." *Id.* at 620. The court also interpreted the pertinent regulations as forbidding the assignment of an "awaiting action" inmate to a DSU. *Id.*

*Kenney*'s limited holding does not help the plaintiff. Because the facts as they appear in the record on these cross motions for summary judgment do not offer any support for conclusions parallel to those made in *Kenney*, it is doubtful that the plaintiff could prevail on the merits of his claim, even apart from the qualified immunity question. In any event, with respect to that question, *Kenney* did not establish, "clearly" or otherwise, a right not to be placed in restrictive confine-ment in an awaiting action status. Moreover, " 'the rule of *Kenney*' is solely a rule of state law, [and] it has no application in this § 1983 action claiming a deprivation of [Abrazinski's] rights secured by the federal Constitution and laws." *McGuinness*, 75 F.3d at 798.

For the qualified immunity inquiry the bottom line is this: Even if he assumed that the plaintiff could establish that his pre-hearing "awaiting action" confinement was unlawful in some way under Massachusetts law, neither *Kenney* nor the departmental regulations nor any other aspect of the "pre-existing law [made] the unlawfulness ... apparent," *Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039, and it cannot therefore be concluded that a reasonable prison official, in the place of any of the defendants, would have understood that by assigning the plaintiff to awaiting action status under the current regulation he was violating the plaintiff's right. *Id.*

As the defendants are entitled to the defense of qualified immunity, the claims for damages must be dismissed. Because the plaintiff is no longer an inmate in any Massachusetts correctional institution, any claim for injunctive relief is moot.

## IV

For all the foregoing reasons, the defendants' motion for summary judgment on the remaining issues in the case is *GRANTED*, and the plaintiff's cross motion is correspondingly *DENIED*. The complaint is to be dismissed.

SO ORDERED.