**Geronimo PIZARRO CALDERON, Petitioner,**

v.

**Ricardo E. CHAVEZ, Respondent.**

**No. CIV.03–2384(JAF).**

United States District Court, D. Puerto Rico.

July 7, 2004.

Geronimo Pizarro Calderon, Carolina, PR, Pro se.

H. Garcia, U.S. Attorney, Lisa E. Bhatia–Gautier, Asst. U.S. Attorney, San Juan, PR, for Respondent.

## ORDER

FUSTE, Chief Judge.

Petitioner Gerónimo Pizarro–Calderón ("Petitioner") brings the present petition for writ of habeas corpus under 28 U.S.C. § 2241 (1994 & Supp.2003) against Respondent, Ricardo E. Chávez ("Respondent"), the warden at Metropolitan Detention Center ("MDC") Guaynabo, Puerto

Rico, where Petitioner was confined as an inmate.[1] *Docket Document No. 1*. Petitioner claims violations of his Fifth and Fourteenth Amendment due process rights. *Id.* Petitioner avers that the Bureau of Prisons ("BOP") deprived him of his constitutionally protected rights in denying him: (1) a one year sentence reduction upon his completion of the designated substance abuse treatment program as provided by 18 U.S.C. § 3621(e)(2)(B), and (2) due process with respect to his disciplinary hearing for unauthorized drug use. *Id.*

## I.

### *Factual and Procedural History*

On September 11, 2000, this court sentenced Petitioner to a term of 72 months imprisonment upon his conviction of violations of 21 U.S.C. § 846 (1999 & Supp. 2003). *United States v. Gerónimo Pizarro–Calderón, No. 99–77(JAF), Docket Document No. 502.* Petitioner completed the BOP-provided Drug Abuse Program ("DAP") on June 22, 2002, at the Federal Prison Camp in Eglin, Florida ("FPC Eglin"), thereby becoming eligible for early release as per 18 U.S.C. § 3621(e)(2)(B). *Docket Document No. 5.* Upon completion of the DAP, Petitioner was transferred from FPC Eglin to MDC Guaynabo to await placement in the Community Correction Center ("CCC") where he would spend a period of six months before being entitled to his one-year sentence reduction. *Docket Document No. 1.*

On May 14, 2003, while residing at the CCC, Petitioner visited Dr. Manuel Vélez ("Dr.Vélez") to seek treatment for lower back pain associated with a lumbar disk hernia. Dr. Vélez proscribed Petitioner medication for his condition. *Docket Document No. 1, Exh. 1.* The following day,

Petitioner was given a urinalysis test which showed positive for cocaine metabolite/benzoylecgonine, a result which Petitioner claims was due to his taking of his prescription medication. *Docket Document No. 1, Exh. 2.* Based on the positive test results, and the finding that the medication Petitioner had been taking could result in a positive showing of opiates use, not cocaine metabolite, an incident report was issued for violation of code 112 (use of any narcotic, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff) and Petitioner was remanded to MDC Guaynabo. *Docket Document No. 1, Exh. 3.*

On May 27, 2003, the Center Discipline Committee ("CDC") held a disciplinary hearing at MDC Guaynabo before Mr. Carlos González ("González"), CCC Case Manager, and Ms. Elsie Toffany ("Toffany"). *Docket Document No. 1.* Petitioner alleges that prior to the hearing's commencement, González informed him that he could not represent him because he was to preside over the CDC hearing. *Docket Document Nos. 1, 5.* Although Plaintiff objected, Mr. José Carrasquillo, DAP Psychologist, was assigned to represent him in the hearing. *Id.* Petitioner requested that Dr. Vélez be called as his witness, but González informed Petitioner that he had not yet interviewed Dr. Vélez. *Docket Document No. 1.* Petitioner proceeded with the hearing, allegedly unwillingly and under duress, and refused to plead guilty to the charges brought against him. *Docket Document Nos. 1, 5.* The CDC concluded that Petitioner committed the violation as charged and recommended to the Discipline Hearing Officer ("DHO") to forfeit the anticipated release time earned by the completion of the BOP's 500–hour

---

**1.** Petitioner was transferred to Hogar CREA Halfway House on April 28, 2004 and is scheduled to be released from the custody of

the Federal Bureau of Prisons on July 24, 2004. *Docket Document No. 8.*

Drug Aftercare Treatment Program, and to disallow maximum possible earned good time. *Docket Document No. 1, Exh. 5.*

Petitioner asserts that he received no further notice regarding the disposition of his case until one month later, when he learned that his case had been referred to the DHO for further examination. *Docket Document No. 1.* Although the DHO report states that it was provided to Petitioner on June 13, 2003, Petitioner alleges that, in fact, he was not provided with a copy of the report until August 26, 2003. *Docket Document Nos. 1, 5, Exh. K.*

Upon review of the CDC's hearing report, Petitioner was found guilty of violating code 112 and the DHO imposed the following sanctions: "disciplinary transfer; disallowance of 40 days GCT; and 30 days disciplinary segregation suspended for 90 days of clear conduct." *Docket Document No. 1, Exh. 5.* Based on Petitioner's conduct and the DHO's findings, Petitioner's anticipated one-year early release date was forfeited. *Docket Document No. 1.*

Petitioner claims that such a sanction, which was not specifically imposed by the DHO, was in contradiction to his due process rights. *Id.* Further, Petitioner contends that the circumstances surrounding his disciplinary hearing, including his not being allowed to present Dr. Vélez as his witness and his untimely receipt of the DHO incident report also run afoul to his Constitutional rights. *Id.* Petitioner requests reinstatement to his status prior to May 25, 2003, with all statutory earned benefits. *Id.* Respondent opposes Petitioner's motion. *Docket Document No. 5.*

## II.

### Sentence Reduction

Petitioner maintains that the BOP's decision to forfeit his one-year sentence reduction constitutes a violation of his constitutionally-protected due process rights in that the DHO did not impose this sanction. *Docket Document No. 1.* We disagree.

18 U.S.C. § 3621(e)(2)(B) provides that upon successful completion of the treatment program "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." We note the statutory text, which instructs that the BOP "may" reduce the sentence of a nonviolent offender who successfully completes the drug treatment program. *See Lopez v. Davis,* 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). "When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Id.* at 241, 121 S.Ct. 714 ("[F]ederal prisoners do not become entitled to a sentence reduction upon their successful completion of a drug treatment program; the words 'may be reduced' do not mean 'shall be reduced.'" *Id.* at 248, 121 S.Ct. 714 (Stevens, J., dissenting on other grounds)).

The BOP has broad discretion in administering prisoners' sentences under 18 U.S.C. § 3621(e). *See Downey v. Crabtree,* 100 F.3d 662, 670 (9th Cir.1996) (recognizing that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program"). As to substance-abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under § 3621(e). *Id.* at 670–71; *Pelissero v.*

*Thompson,* 170 F.3d 442, 444 (4th Cir. 1999); *Bellis v. Davis,* 186 F.3d 1092, 1094 (8th Cir.1999); *Lopez,* 531 U.S. at 240, 121 S.Ct. 714 (affirming that the BOP "may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious" (internal citations omitted)).[2]

■ Courts have consistently held that 18 U.S.C. § 3621(e) does not create a liberty interest subject to constitutional protection. *Cook v. Wiley,* 208 F.3d 1314, 1322–23 (11th Cir.2000) (holding that 18 U.S.C. § 3621(e) creates no constitutionally protected liberty interest and therefore deciding that the BOP's refusal to consider petitioner for a sentence reduction did not violate his due process rights); *Rublee v. Fleming,* 160 F.3d 213, 216 (5th Cir.1998) (finding that the BOP has discretion to deny sentence reductions to even those inmates who successfully complete a treatment program); *Fristoe v. Thompson,* 144 F.3d 627, 630 (10th Cir.1998) (stating that 18 U.S.C. § 3621(e) creates no protected liberty interest); *Orr v. Hawk,* 156 F.3d 651, 654 (6th Cir.1998) (same). Thus, Petitioner's claim that the BOP violated his constitutional due process rights when it denied him his one-year sentence reduction is unavailing. *See McLean v. Crabtree,* 173 F.3d 1176, 1184–85 (9th Cir.1999) (rejecting appellant's due process claim upon affirming that 18 U.S.C. § 3621(e)(2)(B) creates no liberty interest in sentence reduction).

## III.

### *Disciplinary Hearing*

■ Petitioner asserts that because the CDC disciplinary hearing subjected him to a loss of his one-year sentence reduction and to good time credits, he was entitled to due process under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[3] We agree. However, the pertinent question before us is whether the procedures afforded Petitioner meet the minimum standards required by *Wolff. Langton v. Berman,* 667 F.2d 231, 233–34 (1st Cir.1981). Under *Wolff,* an inmate facing a potential loss of good time credit must be provided not only a hearing before a disciplinary committee, but also advance notice, of not less than 24 hours, of the claimed violation, as well as a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff,* 418 U.S. at 563–64, 94 S.Ct. 2963. Although the Court also opined that an inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense, it noted that, with respect to witnesses and documents, prison officials "must have the necessary discretion without being subject to unduly crippling constitutional impediments." *Id.* at 566–67, 94 S.Ct. 2963. Finally, the Court determined that due process does not require that the inmate be permitted to cross-examine witnesses or be provided with counsel. *Id.* at 567, 94 S.Ct. 2963.

■ In the present case, Petitioner's urinalysis results were received on May

---

**2.** We note that the BOP's Program Statement which established the operational policy and procedural guidelines for the delivery of drug abuse treatment services states that "[a]n inmate shall lose his or her provisional early release date immediately if the DHO/UDC finds the inmate, pursuant to the incident report, to have ... [u]sed or possessed alcohol or drugs." *Docket Document No. 6, Exh. M (BOP Program Statement § 6.5.2 ).*

**3.** Although the petitioner in *Wolff* faced, specifically, the loss of good time credits, we believe the potential forfeiture of the one-year sentence reduction under 18 U.S.C. § 3621(e) warrants similar treatment.

22, 2003. *Docket Document No. 1, Exh. 2.* The incident report, including a description of the incident and the reason for instigating disciplinary investigation, was delivered to Petitioner on May 23, 2003. *Docket Document No. 1, Exh. 3.* The CDC disciplinary hearing was held on May 27, 2003. *Docket Document Nos. 1, 5.* We find no violation of Petitioner's due process rights with regards to the notice he received.

Petitioner contends, however, that he was not permitted to have his witness, Dr. Vélez, called for the disciplinary hearing and that this constituted a significant due process deprivation. *Docket Document No. 1.* Although Dr. Vélez was not physically present at the hearing and although he was not contacted immediately, he was telephoned on numerous occasions until he was finally interviewed on July 3, 2003. *Docket Document No. 6, Exh. I.* Dr. Vélez's testimony was made part of the record submitted to the DHO. *Id.*

It is well settled that an inmate has no absolute right to call live witnesses at a disciplinary hearing and prison officials have wide discretion to refuse to call witnesses who are irrelevant, unnecessary, or who pose a security concern. *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits" and may prohibit a prisoner from calling certain witnesses or accessing to certain evidence.); *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) ("[S]o long as the reasons [for not allowing witnesses to testify] are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff.*"); *Turner v. Caspari,* 38 F.3d 388, 390–91 (8th Cir. 1994).

However, even though a prisoner's right to call witnesses is circumscribed, and although prison officials are granted significant leeway in addressing an inmate's requests for witnesses, prison officials do not have unbounded discretion to categorically deny witness requests. *Whitlock v. Johnson,* 153 F.3d 380, 386 (7th Cir.1998). Although the First Circuit has yet to determine whether a prison's blanket policy of denying live testimony from inmate witnesses at a disciplinary hearing would violate due process, *see McGuinness v. Dubois,* 75 F.3d 794, 799–800 (1st Cir.1996) (finding no constitutional violation as to plaintiff inmate on the facts of the case before it, but reserving consideration of whether there could be compelling evidence that the prison's policy violates due process),[4] several circuit courts have interpreted *Wolff*'s due process mandate as requiring an individualized evaluation, based on the facts of each case, as to whether live testimony can be provided without threatening institutional goals. *See, e.g., Whitlock,* 153 F.3d at 389; *Ramer v. Kerby,* 936 F.2d 1102, 1105 (10th Cir.1991); *Grandison v. Cuyler,* 774 F.2d 598, 604 (3d Cir.1985); *King v. Wells,* 760 F.2d 89, 93 (6th Cir.1985); *Dalton v. Hutto,* 713 F.2d 75, 78 (4th Cir.1983); *Bartholomew v. Watson,* 665 F.2d 915, 918 (9th Cir.1982).[5]

---

**4.** *McGuinness* concerned an institutional policy prohibiting inmates from calling witnesses from the general population at any disciplinary hearing held in the West Wing, a heightened security unit used to house inmates with a demonstrated proclivity for violence and disruption. 75 F.3d at 798. The court seemed careful to note that, unlike the circumstances presented to other courts which had addressed this issue, in the case before it, the prison's policy applied only to the West Wing and did not extend prison-wide. *McGuinness* 75 F.3d at 799 n. 7.

**5.** In *Ponte v. Real,* the Supreme Court noted that it did not agree with petitioner that

■ Here, the BOP's policy concerning an inmate's rights at CDC hearings states that an inmate charged with a violation of disciplinary rules or regulations has "[t]he right to call witnesses and present documentary evidence in [his] behalf, provided Center safety would not be jeopardized." *Docket Document No. 6, Exh. P.* As written, the BOP's policy appears to comport with the mandates of an individualized, case-by-case evaluation of an inmate's witness request. However, Petitioner's CDC report states that "Other than CCC staff, MDC–Guaynabo's policy forbids the access of witnesses for disciplinary hearings." *Docket Document No. 1, Exh. 5.* It seems, at the very least, suspect that the CCC's policy for calling witnesses during inmates' disciplinary hearings is not carried out, in practice, as it so purports on paper. *See Mitchell v. Dupnik,* 75 F.3d 517, 525 (9th Cir.1996) (noting the district court's finding that despite its written policy, inmate requests to call witnesses were not evaluated on a case-by-case basis).

Further, Defendant states in his brief, *Docket Document No. 5,* and Petitioner's CDC report confirms, *Docket Document No. 1, Exh. 5,* that Petitioner's witness, Dr. Vélez, was questioned via telephone and his testimony was summarized in the CDC Committee Report. Courts that have considered substantively similar policies whereby witness testimony is obtained by interviewing requested witnesses and summarizing their testimony in an unsworn report, even when live testimony would be feasible, have held that such policies violate due process. *See Whitlock,* 153 F.3d at 388–89 (discussing the evidentiary importance of evaluating a witness' credibility and demeanor); *Mitchell,* 75 F.3d at 525; *Ramer,* 936 F.2d at 1103–05.

Based on the evidence before us, we strongly question whether MDC Guayna-bo's policy regarding its inmates' access to live witness testimony during disciplinary hearings would withstand constitutional scrutiny. However, Petitioner does not here contend that MDC Guaynabo's policy, as a general matter, runs afoul to due process guarantees and we, therefore, need not decide, as a matter of law, that its policy, as applied, is unconstitutional.

■ In the present case, Petitioner's witness, Dr. Vélez, was contacted, and his medical testimony was made part of Petitioner's record. *Docket Document No. 1, Exh. 5.* According to the CDC report, Dr. Vélez reported that the pain medication prescribed to Petitioner, Oxycontin DS, metabolizes as an opiate derivative. *Id.* As to Dr. Vélez, the CDC report contains no other information premised on his medical expertise or indicative of his having rendered a medical opinion susceptible to discrepant interpretation. *Id.* Petitioner fails to allege how Dr. Vélez's live testimony would have added anything to his defense. *See McGuinness,* 75 F.3d at 800 (finding no due process violation where inmate failed to show how proffered testimony would have aided his defense). Even if Petitioner were unconstitutionally denied the right to have Dr. Vélez appear in person at his disciplinary hearing, he has not shown that he was prejudiced by this violation. *Piggie v. Cotton,* 344 F.3d 674, 678 (7th Cir.2003) (applying harmless error analysis to prison disciplinary proceedings); *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991) (same); *Cordova v. Cockrell,* No. Civ.A. 1:02–CV–044–C, 2003 WL 21801144, at *3 (N.D.Tex. July 24, 2003) (finding petitioner's inability to show prejudice as a result of his being denied the right to call witnesses at his disciplinary hearing fatal to his due process claim); *Abrazinski v. DuBois,* 940 F.Supp. 361,

"'across-the-board' policies denying witness requests are invariably proper." 471 U.S.

491, 496, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

364 (D.Mass.1996). As such, we refuse to accept Petitioner's claim that his due process rights were violated in connection with his disciplinary hearing.

## IV.

### *Conclusion*

In accordance with the foregoing, we **DENY** Petitioner's petition for writ of habeas corpus and deny him the relief requested therein.

**IT IS SO ORDERED.**