**James Roscoe DALTON, Appellant,**

v.

**T.D. HUTTO, Gene Johnson, Major San Fillipio, Capt. Seattle, Sgt. R.R. Martin, Cpl. J.D. Millner, Cpl. J. Reid, E.C. Morris, S.V. Pruett, Central Classification Members, J.M. King, Members of ICC board, R.A. Bass, A.P. Grizzard, S.S. Taylor, Mr. Rourk, Appellees.**

**No. 81–6874.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 12, 1982.

Decided Aug. 3, 1983.

---

Stephen E. Baril, Richmond, Va. (Williams, Mullen, Christian, Pollard & Gray, Richmond, Va., on brief), for appellant.

Eric K.G. Fiske, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.

Before WIDENER, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

James Roscoe Dalton, an inmate at Mecklenburg Correctional Center, has appealed from an adverse summary judgment entered by the United States District Court for the Eastern District of Virginia. Dalton, *pro se,* had sought injunctive and compensatory relief for the violation of his constitutional rights pursuant to 42 U.S.C. § 1983. The only relief which Dalton has sought on appeal, however, is injunctive.[1] Dalton specifically challenges the adequacy of a disciplinary hearing wherein two corrections officers called as witnesses by Dalton were not compelled either to testify or to state reasons for their refusal, and the hearing resulted in his conviction of an institutional violation. The right of witnesses to refuse to testify, regardless of the reason or the lack thereof, was established by the prison guidelines.[2]

The district court found that inmates do not have a right to compel witnesses, who do not wish to appear, to testify at prison disciplinary hearings. Thus, the district court concluded that Dalton had not been denied any due process right in that Virginia Department of Corrections Guideline No. 861 affords, in concordance with constitutional requirements, an inmate the right to present only the "voluntary" testimony of witnesses in his behalf.

I. *Relevant Facts*

On September 24, 1980, a group of inmates attempted to take over part of Powhatan Correctional Center. Dalton was identified as a participant in the attempted takeover and was charged with "inciting to riot or rioting," an offense under Virginia Department of Corrections Guidelines and as a result was immediately transferred to the maximum security correctional facility at Mecklenburg. An additional charge of weapon possession was found to be the result of misidentification and was ultimately dropped.

As his defense, Dalton requested Cpl. Reid and Cpl. Millner to serve as witnesses. Guideline No. 861 provides that an inmate charged with a punishable offense has only "the right to present the *voluntary* testimony of witnesses, either inmates or correctional personnel or others, in his/her own behalf." Virginia Department of Corrections Guideline No. 861(VI)(D)(3)(c) (emphasis in the original). In response to Dalton's request, both officers indicated in writing that they would not appear. Cpl. Reid cited no reason for his refusal to testify; Cpl. Millner adverted to prior disciplinary charges he had placed against Dalton, and that therefore he would not serve as a witness or make statements in Dalton's behalf.

1. Dalton has conceded that the prison officials are entitled to immunity against a damages award because of their reliance on the validity of the prison guideline in question.

2. Only voluntary testimony is called for in the pertinent guideline.

At his October 21, 1980 disciplinary hearing, the sole testimony was that of a charging officer representing that Dalton was involved in the attempted takeover and Dalton's denial of the accusation.[3] Based on the charging officer's testimony, Dalton was found guilty and was sentenced to fifteen days in isolation and loss of all accumulated good time.

## II. *The Witness Requirement*

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court mandated that certain procedures be followed in prison disciplinary hearings to satisfy the requisites of due process. The right of an inmate to call witnesses and present documentary evidence in his defense was identified as one such right. Although the right has been qualified,[4] it remains as part of the substantive foundation of procedural due process for inmates. *See Bartholomew v. Watson,* 665 F.2d 915, 918 (9th Cir.1982) ("The right to call witnesses is basic to a fair hearing.").

Virginia prison officials contend that such a right is contained in Guideline 861; it is only the refusal of particular prison employees to testify, and thus involuntariness, that affected Dalton's right to call witnesses. We conclude that it is just such

**3.** The dissent complains that the majority has unnecessarily addressed a constitutional question because supposedly the instant controversy could be resolved on evidentiary grounds: namely, any testimony presented by Dalton's requested witnesses would be merely cumulative, so that the Committee's preclusion of the testimony was not erroneous.

Although it is clear that a prison disciplinary committee has the discretion to make such evidentiary determinations on a case-by-case basis, *Ward v. Johnson,* 690 F.2d 1098 (4th Cir.1982), here the Committee did not make such a determination. The Committee expressly applied Guideline 861, which is a *per se* proscription against the calling of all but voluntary witnesses. Indeed, the defendants have never suggested that Dalton's witnesses could have been excluded because of the cumulative nature of their testimony. Furthermore, the regulations concerning the procedures to be used at prison disciplinary proceedings were established to limit discretion regarding the calling of witnesses. Therefore, *Ward v. Johnson, supra,* is plainly not applicable to the case *sub judice.*

Secondly, even if the Committee had attempted to exclude the testimony of Dalton's witnesses on evidentiary grounds, the testimony was clearly not cumulative. The dissent's characterization of the evidence as such is misleading. When viewed in its proper and *complete* context, it is clear that Dalton, in his complaint, was not admitting the truth of Martin's *adverse* testimony:

*Fortunately, R.R. Martin told the truth about me at the Adjustment Committee and on tape # 319.* (This is the tape all the authorities has refused to listen to.) Sgt. R.R. Martin said that he had made a mistake about me, J. Dalton. Sgt. R.R. Martin said that he saw me in the barbershop and, I was not the inmate who he had thought he had seen with a gas billy. The chairman of the committee ask Sgt. Martin, where was I standing and

where was my hands located at the time. *Sgt. Martin said that I, James R. Dalton was standing alone with my hands down to my sides and, that I was not in a disturbance.* Moreover, Dalton did in fact dispute the evidence against him:

Even though I was about the 3 or 4 inmate to come forward after the officers put up their sticks, Powhatan said, I didn't come forward when giving the opportunity to do so! Sir, what would I look like coming forward, to a mad man with a swinging stick.

Presumably, Dalton would have used the witnesses he requested to corroborate his declaration of innocence. Given a prisoner's inherently limited credibility in a prison disciplinary proceeding, it is difficult to ascertain how the supplemental testimony of two prison officials, corroborating a prisoner's position, could be considered cumulative where the only evidence available in that proceeding was the charging officer's word against the inmate's word. Indeed, it is arguable, from the perspective of credibility, that the character of the supplemental testimony is substantively different from that of the prisoner's testimony.

**4.** *See Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976) (prison officials need not state reasons for refusal to allow confrontation of witnesses); *Wolff v. McDonnell, supra,* 418 U.S. at 566, 94 S.Ct. at 2979 (inmate may be prevented from calling witnesses when permitting him to do so will be unduly hazardous to institutional safety or correctional goals). *Zackek v. Hutto,* 642 F.2d 74, 76–77 (4th Cir.1981) (prison officials retain discretion to refuse to call a witness when the testimony would be irrelevant or unnecessary). *But see Hayes v. Thompson,* 637 F.2d 483, 487–489 (7th Cir.1980) (*Hayes II*) (Some support, though not necessarily reasons for the denial of the witnesses, must appear in the record).

a restriction to unrestrained "voluntariness" that exceeds the boundaries of constitutional fairness. One needs no "right" to call a witness who voluntarily presents himself to testify. If there is preclusion of an entire class of witnesses (*i.e.*, anyone who rather would not appear), the right is dissipated in a cloud of verbiage. An inmate granted the right, albeit qualified, to call witnesses in his behalf loses it altogether, in any meaningful employment of language, if any witness may refuse to testify for no reason whatever. "Due Process does not permit the automatic exclusion of the right to call witnesses." *Hayes v. Walker,* 555 F.2d 625, 629 (7th Cir.1977), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (Hayes I). *See also Mawhinney v. Henderson,* 542 F.2d 1, 3 (2d Cir.1976). Prison regulations which restrict absolutely the calling of certain categories of witnesses have been found unconstitutional. *See Bartholomew v. Watson,* 665 F.2d 915, *supra.* Even if such restrictions are valid as applied (*e.g.*, testimony unduly hazardous to the witness, institutional safety or correctional goals), *per se* proscriptions against the calling of certain categories of witnesses are violative of the Supreme Court's admonition that "the decision to preclude the calling of witnesses should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person." *Id.* at 918.

Guideline No. 861 prohibits an inmate from calling an entire category of witnesses—those who will not voluntarily appear. The class is capable of easy expansion, indeed automatic qualification for admission by *every* witness an inmate may wish to present. In short such a "regulation" is the practical equivalent of no regulation. The Virginia "regulation" simply fails to require a case-by-case analysis of the calling of involuntary witnesses.

The importance of the right to call witnesses is especially critical in the prison context where an inmate already begins with a credibility problem. While recognizing that, unlike courts, prison disciplinary committees do not possess contempt or subpoena powers, prison administration can practically encourage, if not compel, its employees and residents to appear before disciplinary committees when requested to do so.

Finding Guideline No. 861 to be violative of procedural due process, and thus unconstitutional, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

REVERSED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

In deciding the issue of whether a prisoner has a due process right to the compulsory production of involuntary witnesses in a disciplinary hearing, the majority has unnecessarily decided the merits of a constitutional issue when there is an adequate and independent non-constitutional ground for disposing of the case. E.g., *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Justice Brandeis concurring). The judgment of a district court must be affirmed if the result is correct although it may have relied on a wrong reason.[1] *S.E.C. v. Chenery,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943).

The disciplinary hearing at issue was held on account of a disciplinary charge filed by a certain Sgt. Martin for inciting to riot or rioting relating that the plaintiff was involved in a riot in the Powhatan Correctional Center. Martin reported that a disturbance had broken out in the barber shop of the Center. Martin, along with other officers, entered the barber shop, and Captain Seattle told the prisoners that those who were not participating in the disturbance should step forward. The plaintiff did not step forward. Martin also reported that the plaintiff was holding a weapon.

1. My citation of *Chenery* does not mean that I agree that the district court's reason was wrong.

As noted, the plaintiff originally was charged with "inciting to riot or rioting" and the report included the additional charge of possessing a weapon. Martin later determined that he was mistaken in his initial identification of the plaintiff as possessing a weapon (the weapon being in the possession of a different inmate), and so testified at the disciplinary hearing. This second charge, a different separate offense, was not prosecuted. Martin continued to maintain, however, that the plaintiff did not step forward to indicate that he was not involved in the riot. Consequently, the plaintiff was found guilty of inciting to riot or rioting.

The plaintiff claims that he was not participating in the riot but rather was waiting in a pill line. The plaintiff does not dispute, however, that he failed to step forward when requested to do so. Indeed, he admits the truth of Martin's testimony at the Adjustment Committee hearing:

> "Fortunately, R.R. Martin told the truth about me *at the Adjustment Committee* and on tape # 319." (italics added)

Part of Martin's testimony was that the pill line was 30 feet away from the barber shop, and the Committee chose to believe this testimony.[2]

Because the Adjustment Committee found the defendant guilty of inciting to riot or rioting, but did not find the defendant guilty of the separate offense of possession of a weapon (that charge was dropped), any further testimony by other officers would have been only cumulative for "Martin told the truth," and the Committee's action followed Martin's testimony precisely. The Committee may refuse to hear testimony on the grounds that it is cumulative or irrelevant, *see* Virginia Department of Corrections Guideline No. 861 (VI)(H)(2)(b)(ii); *Ward v. Johnson,* 690 F.2d 1098, 1112–13 (4th Cir.1982) (en banc), and therefore there was no error in the Committee's refusal to hear the testimony of the other officers.

**2.** The majority argues (n. 3, p. 77) what Dalton *now* says was Martin's testimony at the hearing in an effort to get away from Dalton's admission that "Martin told the truth." What

I suggest that a federal district court would not even have a criminal conviction overturned for failure to summons such witnesses for an indigent defendant to a criminal trial for the same offense, if this case had been tried in that setting. To magnify the action of the Adjustment Committee to constitutional error I think is a mistake, and I would affirm.

the Committee found that Martin said *at the hearing,* and what is admitted to be the truth, is in its finding. So the majority at this late time is weighing the credibility of witnesses.