Herbert WHITLOCK, Stanley Wrice, and Bennie Lopez, et al., Plaintiffs–Appellees,

v.

Adrienne JOHNSON, Melvin Allen, and George DeTella, Defendants–Appellants.

No. 98–1133.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1998.

Decided Aug. 5, 1998.

Thomas Peters (argued), Murphy, Peters & Davis, Chicago, IL, for Plaintiffs–Appellees.

A. Benjamin Goldgar (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellants.

Before FLAUM, MANION, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Prisoners faced with the revocation of good-time credits have a qualified right to call witnesses in their defense. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Officials at Illinois' Stateville Correctional Center contend that this right is satisfied when, in lieu of actually bringing an inmate's requested witnesses to testify at the revocation hearing, officials instead interview the proposed witnesses and present the prison's disciplinary committee with an unsworn report summarizing the witnesses' testimony. The district court held that this policy violated the prisoners' due process rights as articulated in *Wolff.* We affirm this decision, but we vacate the portion of the district court's award ordering the reopening of previous cases in which inmates' good-time credits were revoked.

## I.

Stateville Correctional Center maintains an Adjustment Committee that holds hearings to adjudicate inmates' alleged violations of prison disciplinary rules. The Adjustment Committee is authorized to mete out a variety of punishments for such violations, *see* 20 ILL. ADMIN. CODE § 504, including the revocation of good-time credits that an inmate may have earned under Illinois law, *see* 703 ILL. COMP. STAT. § 5/3–6–3(c). When an inmate accused of an infraction requests a witness to testify in his defense, the Committee sends an investigator to interview the witness. The requesting inmate is allowed to list the questions he would like posed to the witness, and the investigator poses the questions, records the answers or a summary thereof, and prepares a report summarizing the testimony, which is then presented to the Committee at the inmate's disciplinary hearing.

The Committee relies almost exclusively on these summaries in assessing the testimony of an inmate's defense witness. The Committee will hear live testimony from an inmate's defense witness only when the witness is already present before the Committee (usually on his own disciplinary charges) and

is available to testify when the requesting inmate's case is called.

In 1994, Fares Umar, an inmate at Stateville, brought a class action suit under 42 U.S.C. § 1983 against various prison officials, asserting that Stateville's witness policy violated the Fourteenth Amendment's due process guarantee. Umar's complaint alleged that his good-time credits had been revoked by the Adjustment Committee after a search revealed four homemade knives hidden in his cell. According to the complaint, Umar made written and oral requests that his cellmate, Pablo Malave, appear as a witness at his disciplinary hearing, but Malave was not produced. The complaint averred that Malave would have presented exculpatory testimony that the knives belonged to him and that Umar had no actual or constructive notice of their presence in the cell. The complaint sought damages and declaratory and injunctive relief on behalf of Umar and a class of similarly situated inmates who had been charged with disciplinary offenses and had been adversely affected by the witness policy.

In August 1995, the district court certified a plaintiff class. In its final form, the class consisted of inmates at Stateville Correctional Center (1) who are charged with infractions of prison rules or regulations, (2) who request witnesses for their disciplinary hearings before the Adjustment Committee, and (3) who risk the loss of good-time credits as a result of the decisions that may be reached in their hearings. Umar was the designated class representative at the time of certification.

In 1997, the district court ruled on the parties' cross-motions for summary judgment. On Umar's individual claim, the court held that the Stateville witness policy was not implicated in Umar's case. Although Malave was not called as a witness at Umar's hearing, the Adjustment Committee had heard Malave's live testimony at Malave's own hearing (regarding the same incident) four days earlier. Thus, because Umar's right to present Malave's testimony had not been affected by the challenged policy, the court entered summary judgment in favor of the prison officials on his individual claim.

In doing so, the court recognized that Umar could no longer serve as an adequate class representative, for his claims were not typical of those of the class. *See* FED. R. CIV. PRO. 23(a)(3). The court declined the defendants' invitation to decertify the class, however, and instead allowed new named plaintiffs—Herbert Whitlock, Bennie Lopez, and Stanley Wrice—to be substituted as class representatives. The Whitlock plaintiffs filed an amended complaint seeking declaratory and injunctive relief (and dropping the claim for damages), and the court entered summary judgment in favor of the plaintiff class on its due process claim.

The district court entered a permanent injunction barring the defendants from continuing Stateville's current witness policy. The court also ordered the defendants to review every disciplinary hearing that had been conducted under this witness policy since September 19, 1994 (the date that Umar filed his complaint) and that had resulted in the revocation of good-time credits. For every such hearing in which the inmate class member had requested witnesses, the defendants were ordered to decide whether live testimony should have been allowed and, if so, to restore the inmate's good-time credits or else hold a new hearing. The defendants appeal from this decision and order.

## II.

As an initial matter, we must address the defendants' contention that the district court was obligated to decertify the class and dismiss the action for lack of jurisdiction after the court entered summary judgment for the defendants on Umar's individual claim. According to the defendants, the district court's rejection of Umar's claim was based on its determination that Stateville's witness policy had never caused Umar to suffer any injury. Without an injury in fact, Umar never had standing to bring suit. Once Umar's lack of standing became apparent, the defendants assert, the district court should have dismissed the entire action for lack of subject-matter jurisdiction.

Assuming that the initial certification of the class was appropriate, the district

court acted properly in refusing to decertify the class or dismiss the action once it became apparent that Umar did not have an actionable individual claim. A properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 753, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In *Sosna,* the Court recognized the independent legal status of class actions and held that, where a class has been properly certified, the mootness of the named plaintiff's individual claim does not render the class action moot. 419 U.S. at 399–401, 95 S.Ct. 553. *See also Franks,* 424 U.S. at 753–55, 96 S.Ct. 1251 (applying *Sosna* even though the named plaintiff's claim did not involve an issue "capable of repetition, yet evading review"). In *Geraghty,* the Court extended this principle and held that a class action does not become moot upon expiration of the named plaintiff's substantive claim even when class certification was denied in the district court. *See* 445 U.S. at 404, 100 S.Ct. 1202. Although his individual claim was moot, the Court held, the named plaintiff could continue to argue on appeal for reversal of the district court's denial of class certification. *See id.* at 404–05, 100 S.Ct. 1202.

The defendants point out that Umar's individual claim did not expire because of mootness, as did the individual claims in *Sosna* and *Geraghty,* but instead expired because of a judgment on the merits against him. The reasoning of *Sosna* and *Geraghty,* however, applies with equal force regardless of the reason for the expiration of the named plaintiff's individual claim. The Supreme Court has said as much, albeit in dicta, in *East*

*Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). In *Rodriguez,* the district court had held that the named plaintiffs were not members of the class of victims of employment discrimination that they purported to represent, for the named plaintiffs were not qualified for the positions they alleged were discriminatorily denied to them. The Supreme Court agreed with the district court's rejection of the plaintiffs' individual claims, as well as its decision denying the class claims because of the plaintiffs' inadequacy as class representatives under Rule 23 of the Federal Rules of Civil Procedure. *See* 431 U.S. at 404–05, 97 S.Ct. 1891. The Court, however, then made the following observation:

> Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the plaintiffs' individual claims.

*Id.* at 406 n. 12, 97 S.Ct. 1891. This describes precisely the situation in the instant case. The district court certified a class based on Umar's complaint, and subsequent proceedings undermined Umar's individual claim and revealed that Umar was not an appropriate class representative. The district court acted properly, then, in allowing the class claims to continue (with the substitution of appropriate class representatives) despite the failure of the named plaintiff's individual claim on the merits.[1]

---

1. The litigation in *Satterwhite v. City of Greenville,* 578 F.2d 987 (5th Cir.1978), provides further support for our conclusion that the reason for the expiration of the named plaintiff's individual claims does not affect the survivability of the class claims. In *Satterwhite,* the named plaintiff had lost on the merits of her discrimination claim, *see* 578 F.2d at 990, 991, and the Fifth Circuit, sitting en banc, affirmed the dismissal of the class claims because the plaintiff "was not

then and is not now an appropriate representative." *Id.* at 996. The Supreme Court, without opinion, vacated and remanded the case to the Fifth Circuit for reconsideration in light of *Geraghty. See* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980) (Mem.). The Fifth Circuit, on remand, sent the case back to the district court with instructions to determine "whether as set forth in *Geraghty,* there is still a 'live controversy' between the defendant and at least some

The defendants contend, however, that these principles do not apply when the reason for rejecting Umar's claim on the merits was, in essence, that Umar never had standing to bring his claim in the first place. This argument, however, confuses the jurisdictional issue of standing with the issue of the sufficiency of proof of an essential element of the plaintiff's claim. *Cf. United States v. Martin,* 147 F.3d 529, 531–32 (7th Cir.1998), *Sharpe v. Jefferson Distrib. Co.,* 148 F.3d 676, 677 (7th Cir.1998). The district court determined on summary judgment that Umar had not been injured by Stateville's witness policy, and the defendants believe that this ruling is tantamount to a finding that Umar had no standing to sue. To the contrary, there is no doubt that the district court had subject-matter jurisdiction over Umar's complaint at the time it was filed. Umar's complaint alleged that Stateville's witness policy led to the denial of his request to produce Malave to testify at his hearing. This is an allegation of a concrete, particularized injury caused by the witness policy. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Umar ultimately lost on the merits of his claim because the court concluded that, although Umar was correct that his requested witness was not produced at his hearing, due process did not require the production of a witness who had already appeared regarding the same incident in a related case only a few days earlier. Thus, the court determined that Umar's injury was not cognizable under the Due Process Clause, and Umar therefore failed to carry his burden of proof on an essential element of his claim. But Umar's theory of injury, which was at least colorable, would have entitled him to relief if the court had taken a different view of the Due Process Clause,

and this is enough to confer jurisdiction under Article III:

> "[J]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Rather, the District court has jurisdiction if "the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

*Steel Co. v. Citizens for a Better Env't,* ―― U.S. ――, ――, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998) (quoting *Bell v. Hood,* 327 U.S. 678, 682, 682–83, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Umar's complaint was squarely in accord with this standard, and the court appropriately exercised jurisdiction over the case.

### III.

Due process requires that an inmate faced with the possible revocation of good-time credits be afforded the right to call witnesses in his defense. *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). This right, however, is subject to a number of qualifications:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution.... [W]e must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison offi-

members of the class [the plaintiff] seeks to represent. In the event that the district court determines that there is a case or controversy, then the district court ... shall determine whether the action is appropriate for class certification, and whether [the plaintiff] is a proper class representative." *Satterwhite v. City of Greenville,* 634 F.2d 231, 231 (5th Cir.1981); *see also Walker v. Jim Dandy Co.,* 638 F.2d 1330, 1335 (5th Cir. 1981) (issuing similar instructions in another

class action in which the named plaintiffs' individual claims had been rejected on the merits and recognizing the Supreme Court's direction that "the status of the individual claims is not dispositive of the class claims."). Thus, it is apparent from the Supreme Court's remand in *Satterwhite* that the vitality of class claims may remain intact even though the named plaintiff's individual claims are rejected on the merits rather than dismissed for mootness.

cials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority.... Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

418 U.S. at 566, 94 S.Ct. 2963. As this language suggests, prison officials are granted a great deal of leeway in addressing inmates' requests for witnesses. The Court did not intend to impose an onerous burden on prison officials in conducting disciplinary hearings, and the range of permissible reasons for denying a witness request is quite broad. As the Court stated in a subsequent case, "[S]o long as the reasons [for denying a witness request] are logically related to preventing undue hazards to institutional safety or correctional goals, the explanation should meet the due process requirements outlined in *Wolff*." *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

 Prison officials do not have unbounded discretion, however, to categorically deny witness requests. Several circuits have interpreted *Wolff* to require a case-by-case determination of the propriety of an inmate's request for witnesses, and they have struck down blanket policies that categorically exclude witnesses from appearing. *See Ramer v. Kerby*, 936 F.2d 1102, 1105 (10th Cir.1991); *Grandison v. Cuyler*, 774 F.2d 598, 604 (3d Cir.1985); *King v. Wells*, 760 F.2d 89, 93 (6th Cir.1985); *Dalton v. Hutto*, 713 F.2d 75, 78 (4th Cir.1983); *Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir.1982); *cf. Powell v. Coughlin*, 953 F.2d 744, 749 (2d Cir.1991) (stating that "an individualized assessment of the hazards of calling a particular witness ... might well be warranted with respect to other inmates," but recognizing an exception for clinical mental health staff members who are called as witnesses). *But cf. McGuinness v. Dubois*, 75 F.3d 794, 799–800 (1st Cir.1996) (questioning the case-by-case requirement but reserving the issue for a future case). Our own decision in *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54

L.Ed.2d 320 (1977), was among the first to suggest a case-by-case approach in stating that "[p]rison officials should look at each proposed witness and determine whether or not he should be allowed to testify." *See also Forbes v. Trigg*, 976 F.2d 308, 316–17 (7th Cir.1992), *cert. denied*, 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993) (endorsing a case-by-case requirement). There is no doubt that Stateville's witness policy categorically excludes a broad class of witnesses from appearing before the Adjustment Committee to testify. The policy has no provision for a case-by-case determination. Instead, it excludes all live defense witness testimony before the Committee unless the requested witness is already present before the Committee on other charges and is available when the requesting inmate's case is called.

The defendants argue that the decisions recognizing a case-by-case requirement were wrongly decided, and it is true that the origins of the requirement are a bit obscure. *See McGuinness*, 75 F.3d at 799–800 n. 7. Some circuits, *see Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir.1991) (collecting cases), have traced the roots of the case-by-case requirement to the following language in *Wolff*: "Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness...." *See Wolff*, 418 U.S. at 566, 94 S.Ct. 2963. The Ninth Circuit in *Bartholomew* cited this language in deciding, somewhat quixotically, that a prison's blanket policy excluding certain categories of witnesses "violates the suggestion of the Supreme Court in *Wolff* that the decision to preclude the calling of a witness should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person." 665 F.2d at 918. The Fourth Circuit adopted the Ninth Circuit's holding shortly thereafter in deciding that "per se proscriptions against the calling of certain categories of witnesses are violative of the Supreme Court's admonition that 'the decision to preclude the calling of witnesses should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person.'" *Dalton*, 713 F.2d at 78 (quoting *Bartholomew*, 665 F.2d at 918). These deci-

sions took a broad view of *Wolff*'s requirements. Although this view is certainly not untenable, we share the unease expressed recently by the First Circuit, *see McGuinness v. Dubois*, 75 F.3d 794, 799–800 (1st Cir.1996), that an overly strict interpretation of this case-by-case requirement is not firmly grounded in *Wolff*.

We are also aware that *Wolff*, which was decided almost twenty-five years ago, recognized the possibility that the due process protections afforded to prisoners in disciplinary hearings might require adjustment "as the problems of penal institutions change and correctional goals are reshaped." *Wolff*, 418 U.S. at 568, 94 S.Ct. 2963. The administrative burden on prisons has grown with the burgeoning prison population. The growth in the number of prisoners obviously cuts both ways—it clearly increases the administrative demands on prison officials, but it also likely increases the absolute number of inmates whose defenses to disciplinary charges ultimately prove meritorious. There has been little direction from the Supreme Court, however, in the intervening years to clarify the scope of an inmate's right to call witnesses, particularly with regard to the propriety of blanket policies to govern inmates' witness requests. On this topic, the only guidance following *Wolff* is the brief statement in *Ponte v. Real*, 471 U.S. 491, 496, 105 S.Ct. 2192 (1985), expressing disagreement with the proposition that " 'across-the-board' policies denying witness requests are invariably proper." This comment reflects a certain unease with blanket policies, but it also allows for the possibility that some such policies, if sensitively designed and administered, could be constitutional.

The Second Circuit so held in *Powell v. Coughlin*, 953 F.2d 744, 748–49 (2d Cir.1991), in which the court approved a policy that excluded members of the prison's clinical mental health staff as potential witnesses. The court did not disavow the requirement of an individualized, case-by-case assessment as a general rule, *see id.* at 749, but it believed that exclusion of this particular category of witnesses was amply justified. The court also warned against an overly mechanical application of the case-by-case requirement derived from *Wolff*:

> [T]he considerations expressed by [the prison officials] are generally as applicable to all [Office of Mental Health] clinicians as they would be to anyone, and neither the Constitution nor the injunction obliges the defendants either to repeat in each case the considerations rendering it inadvisable to present OMH consultations in the inmate's presence, or to make finely calibrated assessments as to the precise degree of hazard reasonably to be expected from the presentation of the consultation of a particular clinician regarding a particular inmate.

*Id.* Other cases confronting individualized decisions to exclude witnesses have relied on reasons that, although they were invoked only to justify the particular decision at hand, arguably could apply equally well across the class of similarly-situated witnesses. *See, e.g., Brown v. Frey*, 889 F.2d 159, 167–68 (8th Cir.1989) (approving the denial of an inmate's request to call a prison guard as a witness "because to do so would undermine prison authority by having one guard testify against another guard"). When the reasons for excluding a witness can legitimately be generalized to a class or category of witnesses-because the same reasons for excluding an individual class member will necessarily apply with equal force to the entire class—there is no justification for requiring the prison to engage in what would amount to a rote, meaningless case-by-case analysis.

■ We stress, however, that a rule excluding a class or category of witnesses is presumptively disfavored and is only justified if the prison officials demonstrate that the reasons for excluding the class apply with equal force to all potential witnesses falling within that category. *See Forbes v. Trigg*, 976 F.2d 308, 316–17 (7th Cir.1992) (finding no justification for a blanket policy that allowed inmates and prison staff who are called as witnesses to refuse, without explanation, to appear at the hearing), *cert. denied*, 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993). We continue to believe that a stance favoring case-sensitive administration of witness requests better reflects the importance

of an inmate's interest in good-time credits and the central role that witnesses often play in an inmate's defense. We have long recognized "the importance of the right to present testimony of witnesses for an accused inmate who obviously faces a severe credibility problem when trying to disprove the charges of a prison guard." *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir.1977) (quotation omitted), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). Other courts have reached similar conclusions. For instance, the Eighth Circuit rejected a prison's decision to refuse to call a witness whose testimony would be merely corroborative of the inmate's own testimony. *See Graham v. Baughman*, 772 F.2d 441, 445 (8th Cir.1985). The court stated, "[A]s is many times the case with disciplinary proceedings, this was a swearing contest between the inmate and the charging officer.... 'Merely corroborative' evidence is many times the most probative for it may substantiate and make credible an otherwise bald and self-serving position." *Id.*; *see also Ponte v. Real*, 471 U.S. 491, 510, 105 S.Ct. 2192, 85 L.Ed.2d 553 (Marshall, J., dissenting) ("Many of the other procedural due process rights recognized in *Wolff* ... make sense only if the inmate is allowed to present his or her version of the facts through witnesses and evidence. Apart from such witnesses and evidence, inmates have little else with which to attempt to prove their case or disprove that of the charging officer."). A blanket policy, unless it is sensitively designed and manifestly legitimate across the category of witnesses it seeks to exclude, may well sweep within its scope significant numbers of witness requests that could have been honored without threatening institutional or correctional goals.

■ In light of these principles, we must conclude that Stateville's policy of denying virtually all requests for live witnesses (except in the fortuitous case where the witness already happens to be present) lacks the refinement required to survive constitutional muster. This policy, which encompasses all classes of potential witnesses in all situations, does not reflect a constitutionally appropriate balancing of inmates' due process rights against the needs of the institution. Although some generalized rules excluding certain categories of witnesses may be acceptable, along the lines we have just discussed, Stateville's categorical exclusion of all witnesses simply cuts too broadly. Prisons are not required to, and indeed should not, honor witness requests that threaten institutional or correctional goals, but it does not ask too much of prison officials to avoid a policy that does not even permit live testimony in cases where it could be arranged with relative ease.

■ We are also unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of "calling a witness" even when live testimony would be feasible. Substantively identical policies have been addressed in two other circuits, and each has held that the policies violate due process. *See Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir.1996); *Ramer v. Kerby*, 936 F.2d 1102, 1103–05 (10th Cir.1991); *Bartholomew v. Watson*, 665 F.2d 915, 917–18 (9th Cir.1982); *see also Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992) (endorsing *Ramer's* reasoning), *cert. denied*, 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993). We see no reason to depart from these decisions in evaluating Stateville's policy. This interview-and-summarize policy is a useful, even laudable approach when live testimony is unavailable—although the fact that the prison investigator's report is unsworn may be problematic, *see McCollum v. Miller*, 695 F.2d 1044, 1048–49 (7th Cir.1982) (discussing reports summarizing the testimony of inmates serving as confidential informants). But the interview policy is at best an imperfect substitute for actual testimony before the Adjustment Committee where actual testimony is otherwise feasibly obtained. Particularly since witnesses are often the only means for an inmate to attempt to prove his version of events, the opportunity for the Adjustment Committee to evaluate the credibility and demeanor of the inmate's defense witnesses should not be discounted. Prison officials are appropriately given a great deal of discretion in addressing requests for live witness testimony, and there are often sound reasons, based on institutional and correc-

tional goals, for denying such requests. But this discretion does not include, in our view, the power categorically to exclude all live testimony and thereby deprive inmates of any opportunity to have the Adjustment Committee hear their witnesses' testimony in their own words.

Although we conclude that the prison's current policy does not conform to the requirements of due process presently mandated by *Wolff*, we are fully cognizant of the administrative burden that disciplinary hearings have placed on the prison. According to the defendants, the Adjustment Committee meets five days per week and holds fifty hearings per day, with each hearing lasting an average of six to twelve minutes. The practical difficulties of accommodating such a large caseload are readily apparent. The Supreme Court's admonition about the difficulty of prison administration and the need for deference to prison officials is as true today as it was almost a quarter-century ago:

> The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments.

*Wolff v. McDonnell*, 418 U.S. 539, 566–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The district court, following its award of summary judgment for the plaintiffs, directed the defendants to come forward with a plan for the implementation of a new prison policy regarding requests for witnesses. In evaluating any such plan or procedure, we trust that the experienced district judge will make every effort to take into account the heavy demands made on the prison system and the need to accord deference to the prison officials' determination, within constitutional limits, of how best to implement the safeguards and procedures required by the Due Process Clause.

## IV.

▮ As a final matter, there is one aspect of the district court's order granting injunc-tive relief that we must address. The court ordered, among other relief, that the defendants review past disciplinary hearings in which the unconstitutional witness policy operated to deny witness requests and in which the inmate's good-time credits were revoked. For every such hearing, the defendants were ordered to decide whether live testimony should have been allowed and, if so, to hold a new hearing or else restore the inmate's good-time credits.

▮ This retrospective order exceeded the scope of relief available to the inmate class under § 1983. Section 1983 does not authorize actions that "imply the invalidity of the deprivation of [an inmate's] good-time credits." *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 1588, 137 L.Ed.2d 906 (1997); *see also Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Unlike the prospective part of the court's injunctive order, which is permissible relief under § 1983, *see Edwards*, 117 S.Ct. at 1589, an injunction to restore revoked good-time credits may only be sought in habeas corpus proceedings. *See Preiser v. Rodriguez*, 411 U.S. 475, 487, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The plaintiffs argue that the court's retrospective injunction is only a mechanism for providing notice to class members who may want to pursue habeas proceedings, but this is not a fair reading of the district court's order. The order plainly contemplates the reopening of past Adjustment Committee decisions that revoked prisoners' good-time credits. The order offers the prison a choice of how to proceed—it may either hold new hearings or simply restore outright the previously revoked credits—but both alternatives imply the invalidity of the earlier revocation proceedings. We therefore vacate this portion of the district court's injunctive award.

For the reasons given above, we affirm the court's entry of summary judgment in favor of the plaintiff class. Because of the limitations on the scope of relief available under § 1983, however, we vacate the retrospective portion of the court's order calling for the reopening of previous disciplinary decisions

in which inmates' good-time credits were revoked.