**Curtiss DOAN, Petitioner–Appellant,**

v.

**Edward BUSS, Respondent–Appellee.**

**No. 03–1258.**

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 31, 2003.[*]

Decided Oct. 31, 2003.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Curtiss Doan, pro se, Westville, IN, for Petitioner–Appellant.

Frances Barrow, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

### ORDER

Indiana inmate Curtiss Doan petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 claiming that officials at the New Castle Correctional Facility violated his due process rights during a prison disciplinary hearing. He also moved for an injunction to force prison officials to return legal materials he says they confis-cated from his cell. The district court denied relief, concluding that Doan was not denied due process and that § 2254 is not an appropriate means to challenge the seizure of his property. We affirm.

In July 2002 Doan was ordered by Sergeant Rinehart to return to his bunk for an inmate count, and responded by yelling a string of expletives. As a result Doan was taken to segregation and charged with Intimidation, a Class B offense under the Indiana Department of Correction ("IDOC") Adult Disciplinary Procedures. Several days later Doan was notified of the charge and informed that a hearing before a Conduct Adjustment Board ("CAB") would take place in two days. Doan plead-ed not guilty and requested the assistance of a lay advocate and the presence of two inmates to appear as witnesses on his be-half.

Prison officials gave each witness a form on which to write a statement in lieu of appearing at the hearing. The first wit-ness wrote simply, "I know nothing." The second witness confirmed that Doan did yell expletives at Sergeant Rinehart. A lay advocate was named, but Doan was dissatisfied and requested a replacement. His request was denied. At his hearing Doan admitted that he "cussed" at the sergeant but denied that his actions consti-tuted Intimidation. The CAB apparently agreed and instead found Doan guilty of Disorderly Conduct, another Class B of-fense. The CAB sanctioned him with five days disciplinary segregation, the loss of fifteen days of earned credit time, and a demotion from credit earning class I to class II. Doan appealed to the facility su-pervisor, who declined to disturb the deci-sion. Doan next appealed to the IDOC's Final Reviewing Authority, who upheld the CAB's findings but reduced the charge to

Insolence, a Class C offense, and restored the fifteen days of earned credit time.

An Indiana prisoner has a protected liberty interest in his credit earning class, and that class cannot be reduced unless he receives due process. *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir.2001). A prisoner is entitled to 24 hours written notice of the charge, an opportunity to present evidence to an impartial decision-maker, and a written statement explaining the board's decision, *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 570–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Piggie v. Cotton*, 342 F.3d 660, 662 (7th Cir.2003), that is supported by "some evidence" in the record, *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454–55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie*, 342 F.3d at 662.

■ Doan first argues that the district court erroneously evaluated his claim using the "some evidence" standard rather than a "preponderance of the evidence" standard he says is required by Ind.Code § 11–11–5–5. Doan is mistaken. We will not overturn the CAB's decision provided there is "some evidence" to support it. *Hill*, 472 U.S. at 455; *Viens v. Daniels*, 871 F.2d 1328, 1334–35 (7th Cir.1989) (holding that courts may not reweigh evidence presented to board). Any additional procedural protections Indiana may afford its inmates are matters of state law, which cannot be raised in a habeas corpus proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir.1998).

■ Doan seems to suggest that there was not even "some evidence" to support the CAB's finding because it never considered his allegation that Sergeant Rinehart provoked him by using profane language before Doan responded in kind. But who swore first is irrelevant because Doan has presented no authority even suggesting that aggressive behavior by a guard permits an inmate to respond with loud and abusive language. Doan and his own witness both agreed that Doan swore at Rinehart, and this was the fact upon which the CAB found Doan guilty. This is ample evidence to support the CAB's finding. *See Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir.1994) (decision will be overturned "only if no reasonable adjudicator" could have found inmate guilty).

Doan next contends that he was denied due process when prison officials refused to let him call and question his two witnesses. The record before us raises the inference that the IDOC has a practice of denying all requests for live witnesses made by inmates in segregation. Doan explains in his brief that when the CAB members arrived at his segregation cell to conduct the hearing, one of the members told him that they "don't do that" when he requested the presence of his designated witnesses. We note also that the IDOC form provided to Doan's witnesses includes a series of check boxes to explain why a written statement is submitted in lieu of live testimony. The first box is labeled "Offender in segregation," suggesting that the IDOC considers this reason enough to deny a request for a live witness (no box was checked on the forms tendered by either of Doan's witnesses). Most telling, however, the warden wrote in response to Doan's initial administrative appeal that his request for live testimony had properly been denied because Doan was in segregation at the time of his hearing and IDOC policy is to provide a form to the witnesses to obtain their statements. The state in its brief has not addressed Doan's contentions about the existence of this apparent practice, and maintains simply that under *Wolff* oral testimony is not required as

long as written statements are obtained. The state's position over-simplifies the matter.

A prison disciplinary hearing is not a criminal trial. "Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses." *Henderson,* 13 F.3d at 1078. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits" and may refuse to allow a prisoner to call certain witnesses or have access to certain evidence if the needs of the prison so require. *Wolff,* 418 U.S. at 566. Still, the fact that a prisoner's right to call witnesses is circumscribed does not mean that prison officials possess unbounded discretion to refuse to allow inmates to present live testimony.

We have held that due process typically requires a case-by-case evaluation of whether live testimony can be provided without threatening institutional goals, *Forbes v. Trigg,* 976 F.2d 308, 317 (7th Cir.1992), and that prison officials cannot arbitrarily exclude witnesses, *see Piggie,* 342 F.3d at 666; *see also King v. Wells,* 760 F.2d 89, 93 (6th Cir.1985); *Dalton v. Hutto,* 713 F.2d 75, 77–78 (4th Cir.1983). Excluding a class of witnesses is not always improper, but a broad exclusion is "presumptively disfavored and is justified only if prison officials demonstrate that the reasons for excluding the class apply with equal force to all potential witnesses falling within that category." *Whitlock v. Johnson,* 153 F.3d 380, 387–88 (7th Cir.1998). If an inmate's request for witnesses is denied, prison officials at some point must explain the reason for the denial. *Ponte v. Real,* 471 U.S. 491, 497–99, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

Due process is generally not satisfied when prison officials allow only written testimony without evaluating whether the physical presence of the witnesses would jeopardize institutional goals. In *Whitlock* we noted that written statements are "at best an imperfect substitute for actual testimony . . . where actual testimony is otherwise feasibly obtained." *Whitlock,* 153 F.3d at 388. Other circuits share our concerns that written statements are inadequate when presenting live testimony is feasible and compatible with institutional needs. *See Mitchell v. Dupnik,* 75 F.3d 517, 525 (9th Cir.1996); *Ramer v. Kerby,* 936 F.2d 1102, 1104 (10th Cir.1991); *Bartholomew v. Watson,* 665 F.2d 915, 917–18 (9th Cir.1982).

This case differs from *Whitlock* in that Doan was not denied access to live testimony from a *class of witnesses* –prison staff, for example–but instead was among a *class of inmates* –those in segregation– who are apparently denied access to live testimony from any witness. The two practices, however, raise analogous concerns. If indeed the IDOC categorically refuses to allow live witnesses for inmates in segregation at the time of their CAB hearings, the ramifications are significant. Doan apparently was moved from the general population to segregation because he was accused of a disciplinary violation, and we have no way of knowing from this record whether this is a typical practice for prisoners awaiting CAB hearings for serious violations. If so, a practice of excluding live testimony at disciplinary hearings for all inmates in segregation would effectively deny a significant portion of Indiana inmates the right to present live testimony.

But we leave this question for another day. On this record, we cannot say that Doan was prejudiced by the absence of his witnesses because he has not shown how their presence would have affected the outcome. One witness said that he didn't know anything and the other confirmed the allegations against Doan. Since

we fail to see how either inmate could have aided Doan's defense, the CAB's refusal to allow them to appear must be considered harmless. *See Piggie,* 342 F.3d at 666; *see also McGuinness v. Dubois,* 75 F.3d 794, 798–800 (1st Cir.1996) (declining to decide whether a blanket policy denying live witnesses to inmates in segregation violated due process because inmate did not demonstrate how proffered testimony would have aided his defense).

█ Doan next argues that the notice requirement was not satisfied because he was initially charged with Intimidation but ultimately convicted of Insolence. The notice requirement serves to enable the inmate "to marshal the facts and prepare a defense." *Wolff,* 418 U.S. at 564. Here, Doan's conduct report set out the facts underlying the Intimidation charge and was sufficient to apprise him that he could be subject to a lesser charge of Insolence. *See Northern v. Hanks,* 326 F.3d 909, 910 (7th Cir.2003). The factual basis for each is the same, so the report gave Doan all the information necessary to defend against the reduced charge. *See id.* at 911.

█ We also reject Doan's contention that he was denied his choice of lay advocate. A prisoner has a right to a lay advocate only if he is illiterate or the issues presented are complex. *Wolff,* 418 U.S. at 570. A charge arising from the use of profanity towards a prison official is straightforward, and Doan's court filings demonstrate that he is far from illiterate. Doan had no constitutional right to the assistance of any lay advocate, much less the lay advocate of his choice. *See Miller v. Duckworth,* 963 F.2d 1002, 1004 (7th Cir.1992).

█ That leaves Doan's request for injunctive relief to compel the return of legal materials confiscated by prison offi-

cials. Doan contends that not having his materials has hampered his ability to pursue this and other lawsuits. This § 2254 action, however, is not the appropriate vehicle by which to recover materials of significance to some unrelated lawsuit. *See Moran v. Sondalle,* 218 F.3d 647, 650–51 (7th Cir.2000) (per curium) (noting that habeas corpus affords means of challenging only the fact or duration of custody). If the confiscated materials bore some relationship to this action, we cannot conclude that the district court abused its discretion in refusing to compel their return because Doan has never explained what was taken or how he was harmed by the lack of his materials. *See Ortloff v. United States,* 335 F.3d 652, 656 (7th Cir. 2003) (legal materials are merely the instruments for presenting grievances to a court; their loss is not enough standing alone to establish a hindrance of a legal claim).

Finally, Indiana again asks us to revisit our decision in *Walker v. O'Brien,* 216 F.3d 626 (7th Cir.2000). We decline this invitation for now.

AFFIRMED.