**Daniel C. PORTEE, Petitioner–Appellant,**

v.

**Stanley KNIGHT, Superintendent, Respondent–Appellee.**

No. 03–3343.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 20, 2004.*

Decided March 26, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Daniel C. Portee, Bunker Hill, IN, pro se.

Stephen R. Creason, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before BAUER, COFFEY, and ROVNER, Circuit Judges.

## ORDER

Indiana inmate Daniel Portee petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a prison disciplinary conviction for disruptive conduct that cost him 60 days of earned credit time. Portee contends that he was denied due process because prison officials failed to give him adequate notice of the charge, and kept him from presenting testimonial and documentary evidence. The district court denied the petition, and we affirm.

Portee's disciplinary conviction stemmed from events at Wishard Hospital. According to Sergeant Williams's conduct report, Portee was taken to Wishard for an MRI of his back but thought he was there to receive treatment for his arm and became argumentative upon discovering otherwise. Portee raised his voice, waved his hands at the medical staff, and began advancing toward them in an aggressive manner. Eventually he consented to undergo the MRI, but when the staff then attempted to locate a vein in which to inject the dye for the MRI, Portee demanded loudly that his restraints be removed and threatened reprisals if the medical staff did not administer the shot properly. Williams adjusted Portee's restraints to allow the medical staff to perform the injection. However, Portee continued to demand that his restraints be removed completely. In his conduct report Williams described how Portee's behavior had made the medical staff "cautious, uncomfortable, and uneasy with his presence." Williams related that Portee's behavior prompted other medical personnel to turn their attention away from their own duties to focus on Portee. Additional medical staff also had to assist Williams and another correctional officer in monitoring Portee.

Portee contends, however, that he behaved calmly throughout the entire incident. According to Portee, the MRI technician requested that his restraints be removed in order to administer the injection and conduct the MRI, and Sergeant Williams stated that he would not do so until Portee was inside the MRI room. Portee then requested that Williams free his arms because the technician was having difficulty locating a vein in his hand. As both Portee and Williams agree, another correctional officer arrived at that point, and Portee asked whether the officer had a gun and would "guard him" while Williams removed his restraints. According to Portee, Williams again informed Portee that he would not remove his restraints until medically necessary. Eventually, says Portee, the technician told Williams that it was necessary to undo the restraints before Portee entered the MRI room because no metal items were allowed in due to radiation concerns, and Williams then agreed to do so.

Sergeant Williams later submitted a conduct report about the incident charging

Portee with disorderly conduct, and Portee received notice of the charge four days before his Conduct Adjustment Board (CAB) hearing. In the screening report for the charge, an officer recorded Portee's request to have the two technicians who administered the MRI testify. According to Portee, he also informed the officer that he had documentary evidence to present at the hearing, but she failed to check the appropriate box. One day before the hearing, Portee wrote a letter to the "MRI Department supervisor" at Wishard requesting the names of the technicians and written statements from them.

At the hearing Portee submitted a written statement and his testimony denying Sergeant Williams's allegations. Portee alleges that he also requested that the hearing be postponed to await a response to his letter requesting the technicians' statements. The CAB hearing report, however, does not mention a request for postponement and instead explains that the CAB disallowed the two witnesses because they did not work at the prison. According to the Department of Corrections (DOC) policy, a clarification of which Portee obtained from the DOC policy manager after the hearing, an inmate may call outside witnesses but must secure their testimony himself because of the prison's position that it lacks authority to compel such testimony. Portee also testified at the hearing that Williams fabricated the conduct report to retaliate for grievances Portee had submitted. Although Portee brought copies of prior grievances and conduct reports to the hearing, the CAB deemed them irrelevant and refused to admit them. Relying on Sergeant Williams's conduct report, the CAB then found Portee guilty of the lesser offense of disruptive, rowdy, unruly conduct.

As an initial matter, the state argues that we should reconsider our holding in

*Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000), and require Portee to obtain a certificate of appealability, devoting the majority of its brief to this point. Because the state raises no new argument for overturning *Walker*, we decline to revisit that decision, and we turn to the merits of Portee's appeal.

Because Portee lost good time credits, he was entitled to due process safeguards during the disciplinary process. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Due process requires at least 24 hours' written notice of the charge, an opportunity to present a defense to an impartial decision-maker, a written explanation of the fact-finder's decision, and some evidence to support that decision: *Id.* at 563–66; *Superintendent, Mass. Corr. Instit., Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir.2003).

■ As he did in the district court, Portee contends here that he did not receive proper notice of the lesser charge of disruptive, rowdy, unruly conduct. When an inmate receives adequate notice of the original charge, however, that notice sufficiently apprises the inmate that he could be subject to a lesser charge if the factual basis for both charges is the same. *See Northern v. Hanks*, 326 F.3d 909, 911 (7th Cir.2003) (per curiam). Because prison officials informed Portee four days before the hearing that he would be defending himself against a charge stemming from his conduct at the hospital, and the factual allegations in the report support both the original charge and the lesser charge, Portee had adequate notice. *See id.; Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir. 1992).

■ Portee also argues that he was denied due process when the CAB disallowed his two requested witnesses and refused to

postpone the hearing to await written statements from them. The CAB explained that it denied Portee's witnesses because they "don't work at the prison." The state also suggests that Portee waived his right to call the MRI technicians because he never gave advance notice of his attempt to contact them or requested a continuance. However, for purposes here we accept as true that Portee requested a continuance to await the technicians' responses. *See Piggie v. McBride*, 277 F.3d 922, 925–26 (7th Cir.2002) (disciplinary board's findings of fact not entitled to presumption of correctness).

A blanket policy prohibiting outside witnesses from testifying at disciplinary hearings about alleged misconduct occurring entirely beyond the prison walls would presumptively violate due process, *see Whitlock v. Johnson*, 153 F.3d 380, 386–87 (7th Cir.1998), as well as the prison's own internal policy permitting inmates to call outside witnesses so long as they secure the testimony. Nonetheless a prisoner's right to call witnesses is quite limited. *See Wolff*, 418 U.S. at 566. A prison must be allowed to keep a hearing within reasonable limits and to carry out their process expeditiously. *Id.; Forbes v. Trigg*, 976 F.2d 308, 316 (7th Cir.1992). At the same time, the due process requirements of *Wolff* are meant to ensure that a prisoner has a fair chance to marshal evidence and prepare a defense. *Benitez v. Wolff*, 985 F.2d 662, 665 (2d Cir.1993); *see Northern*, 326 F.3d at 910. There may be instances where a disciplinary board will be expected to allow an inmate more than twenty-four hours' notice in the case where the only witnesses to a disciplinary infraction are located outside the prison facility.

In this case, however, Portee was given notice of the disciplinary charge four days before the hearing. Despite this advanced amount of time, Portee chose not to write a letter to the hospital until one day prior to the hearing. We have previously stated that a prisoner is not entitled to wait until the day of the hearing to call a witness. *Miller v. Duckworth*, 963 F.2d 1002, 1004 n. 2 (7th Cir.1992). The same might be said for waiting until the day before the hearing to attempt to contact an outside witness. Had Portee written his letter to the hospital as soon as he received notice of his disciplinary hearing, we might have been required to decide whether under the circumstances due process compelled the CAB to wait a longer amount of time before proceeding with the hearing. *See Whitlock*, 153 F.3d at 387 (explaining that *Wolff* recognized that due process protections might over time require adjustment to meet changing institutional problems and goals). But we need not decide this issue today. Prisons have a right to be wary of delay tactics and require hearings to occur in a timely fashion. *Sweeney v. Parke*, 113 F.3d 716, 719 (7th Cir.1997), *overruled in unrelated part, White v. Ind. Parole Bd.*, 266 F.3d 759 (7th Cir.2001). Although we think a complete denial of outside witnesses would be a violation of due process, the real hindrance to Portee's acquisition of witnesses was that he ran out of time. And because Portee was not diligent in pursuing his witnesses in a timely fashion, he cannot now blame his inability to obtain witness testimony on the prison's failure to postpone the hearing.

■ Finally, Portee contends that he was denied due process when the CAB refused to accept copies of his past grievances and conduct reports to corroborate his testimony that Sergeant Williams wrote the conduct report to retaliate for his complaints. According to Portee, these documents would have undermined the reliability of the conduct report, so that there would not be "some evidence" to support his disciplinary conviction. The

state argues that the prior conduct reports and grievances were not relevant to the pending charge. In addition, the state responds that Portee's retaliation· claim fails because he received all the process that *Wolff* requires, *see McPherson v. McBride,* 188 F.3d 784, 787 (7th Cir.1999), but that position is unhelpful because Portee's argument is that the CAB impeded his *Wolff* right to present evidence.

Nonetheless, we conclude that the exclusion of Portee's documentary evidence did not violate due process because the past grievances and conduct reports were repetitive of Portee's testimony and thus irrelevant. Since Portee wrote and submitted the grievances himself, they are equivalent in probative value to his own testimony and do not provide any corroboration of his defense of retaliation. *Cf.*

*Whitlock,* 153 F.3d at 388 (noting that live testimony is often highly probative because it can substantiate inmate's self-serving account of events); *Forbes,* 976 F.2d at 317 (witness testimony is critical because inmates face a credibility problem). Moreover, the CAB never suggested that it doubted whether Portee had filed these grievances; instead, it chose to rely on Sergeant Williams's conduct report, rather than Portee's testimony in reaching its decision.

AFFIRMED.